FREDERICKA HOMBERG WICKER, Judge.
li>The plaintiff/appellant appeals the trial court’s grant of the defendant’s motion for summary judgment. Having found that the plaintiff will not be able to prove the temporal element of her cause of action, we affirm the judgment appealed from. Factual and Procedural Background
The plaintiff/app ellant, Ms. Valerie Flowers, filed a Petition for Personal Injuries and Damages against the defendant/appellee, Wal-Mart Stores, Inc. (Wal-Mart) on September 8, 2010, for injuries she allegedly sustained when she slipped and fell in a puddle of water at the Wal-Mart store located at 1501 Manhattan Boulevard in Harvey, Louisiana on September 15, 2007. Ms. Flowers described the events leading up to the fall as follows:
Ms. Flowers stated that she went to retrieve a gallon jug of water from the water aisle in Wal-Mart. As she reached to grab a jug of water, she noticed that one of the jugs contained only about one-third of its contents. She stated, however, that *698 she did not observe any water leaking from that jug nor did she see any water |son the shelf base where that gallon jug was located. Ms. Flowers grabbed a full gallon jug of water and turned to return to her shopping cart, which she had parked in the aisle. As she turned around, however, she lost her footing in the previously unseen water and fell to the ground. As she fell, she observed a dinner-plate-size puddle of water protruding from underneath the bottom shelf. When she fell to the ground, the jug of water that she held in her hand burst open and joined the puddle of water which she alleged was already on the floor.
Ms. Joan LeBlanc, a Wal-Mart associate, was the first to arrive on the water aisle after Ms. Flowers fell. She provided the following statement in an affidavit:
[O]n that date, I hear [sic] some fall. I know the sound because I hear [sic] it before several times. At that time I had to run over to the water jug container stack to help the lady, who fell on her back and side. I came up to the area and it was a mess. There was water all over the floor. There was an old man, who worked in the stacking of the water, and he was responsible to check on the water and should have seen the water on the floor underneath and on the side of the stacked water.
Ms. Theresa Scott, Wal-Mart’s assistant manager, arrived at the accident site after Ms. LeBlanc. Her deposition testimony reveals that the puddle was approximately one to two steps away from the shelf. Ms. Scott completed the accident report, wherein she indicated that a slip and fall occurred on the ceramic tile, adding that “there were no defects.” She then took photographs of the area, which included the gallon jug that Ms. Flowers dropped, as well as the jug that Ms. Flowers observed on the shelf that was missing water.
Wal-Mart moved for summary judgment on May 18, 2011, arguing that Ms. Flowers would not be able to prove the temporal element required to sustain her claim of either actual or constructive notice. The trial court granted the summary judgment motion in open court on November 9, 2011. The judgment was reduced to writing on November 15, 2011 and Ms. Flowers’ claims were dismissed with ^prejudice. Ms. Flowers devolutively appealed, arguing that the trial court erred in finding that she failed to prove that Wal-Mart had constructive notice of the alleged dangerous condition prior to her fall.
Discussion

Standard of Review

We apply the de novo standard of review in reviewing a district court judgment on a motion for summary judgment. Robinson v. Jefferson Parish Sch. Bd., 08-1224 (La.App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043, writ denied, 09-1187 (La.9/18/09), 17 So.3d 975 (citation omitted). We use “the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. Id. La. C.C.P. art. 966(B) provides that summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the *699 mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(C)(1) further adds that “after adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.”
Ordinarily, the movant bears the burden of proof on a motion for summary judgment. La. C.C.P. art. 966(C)(2). If the movant meets this initial burden, the burden then shifts to the adverse party to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. Robinson, supra, at 1043, citing, Champagne v. Ward, 03-3211, p. 5 (La.1/19/05), 893 So.2d 773, 776-77. Thereafter, if the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. Id. In slip and fall cases, however, the plaintiff bears the initial burden of proving each element of her cause of action under La. R.S. 9:2800.6(B). White v. Wal-Mart Stores, Inc. 97-0393 (La.9/9/97), 699 So.2d 1081, 1082.

Slip and Fall

La. R.S. 9:2800.6 provides, in relevant part:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
Because a plaintiff must prove each of these elements, “the failure to prove any is fatal to the claimant’s cause of action.” White, supra, at 1086.
Where a claimant relies upon constructive notice[1] under La. R.S. 9:2800.6(B)(2), as Ms. Flowers does here, the claimant must come forward with | (¡“positive evidence” showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence. Id. at 1082. This “positive evidence,” which is required to prove the temporal element, may be both direct and circumstantial. Rodgers v. Food Lion, 32,856 (La.App. 2 Cir. 4/5/00), 756 So.2d 624, 628. Thus, a claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the stat *700 ute. White, supra, at 1084. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. Id. at 1084-85.
To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care. White at 1086. Though there is a line of jurisprudence which states that circumstantial evidence of a slow leak may be sufficient to prove the temporal element necessary to defeat a motion for summary judgment, those cases are distinguishable from the facts of this case.
In Smart v. Winn-Dixie of Louisiana, Inc., 99-435, (La.App. 5 Cir. 9/28/99), 742 So.2d 1062, this Court determined that the plaintiff provided sufficient evidence to show that a slow leak occurred that, if proven at trial, supported his contention that “the puddle of liquid existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.” Id. at 1065. The evidence in that case consisted of the store manager’s discovery that the source of the liquid was “a two liter soft drink bottle turned on its side on the floor under the shelf and slowly leaking from its unsealed cap.” Id. at 1063. |7In addition, Winn-Dixie conceded that the “mostly-empty[2] two liter soft drink bottle was the source of the liquid” on the floor. Smart, supra, at 1065 n. 1. Also, both the plaintiff and his son-in-law submitted affidavits describing the liquid as a three by four foot puddle. Id. at 1065. Considering all of the evidence in tandem, this Court determined that the trial court erred in granting the motion for summary judgment in Winn-Dixie’s favor.
In Spano v. Sav-A-Center, Inc., 210 F.3d 369 (5 Cir.2000), the United States Fifth Circuit Court of Appeal, determined that the plaintiff presented “positive evidence” that the dangerous condition existed for some time. In that case, the plaintiff testified that the spill was quite large, approximately 24 inches in diameter. Like Smart, Sav-A-Center’s management conceded that the puddle resulted from a slow leak, stating that the “Formula 409 bottle was almost empty and that the majority of the fluid from the bottle ... was on the floor.” Id. The Spano court determined that the circumstantial evidence regarding the puddle’s size, coupled with management’s concession that the puddle “likely resulted from a slow leak due to a loose cap on top of the bottle,” was sufficient to defeat the motion for summary judgment. Id. Similarly in Rodgers v. Food Lion, Inc., 32,856 (La.App. 2 Cir. 4/5/00), 756 So.2d 624, 628-29, the Second Circuit determined that, “[t]he amount of wine on the floor [approximately 3 feet in diameter], the absence of an observable, rapid leak, and the indication that Food Lion may have neglected to check the aisles for several hours before this accident, show that there is a genuine issue of material fact regarding constructive notice, just as there was in Smart v. Winn-Dixie of Louisiana, supra.”
| sIn Smart, Spano, and Rodgers, the courts considered the puddles’ large size in giving credence to the plaintiffs’ assertions that the liquid existed for some period of time prior to the falls. In those cases, evidence was presented that the size of the *701 puddles ranged between two and four feet in diameter. In this case, however, Ms. Flowers’ own testimony was that the puddle was about the size of a dinner plate, which is typically between ten and 12 inches in diameter. Moreover, the managers in both Smart and Spano conceded that the source of the liquid came from the bottles. In Smart, the store manager observed the slow leak from the unsealed cap, while the manager in Spano stated that the leak came from a loosened cap on the bottle’s top. Wal-Mart has made no such admission in this case. On the contrary, Ms. Flowers testified that the upright gallon jug of water still retained its cap. She contends that because the gallon jug was missing two-thirds of its content, it can be inferred that the water escaped and caused the spill.[3] However, there is no evidence that the water escaped or that there was a hole in the jug. Thus, unlike Spano and Smart, there is no evidence of an unsealed or loosened bottle cap. The only similarity between the present case and the above-cited cases is Rodgers’ finding of the “absence of an observable, rapid leak.” We are mindful, however, that that particular finding in Rodgers was coupled with additional findings regarding the puddle’s large size as well as the possibility that Food Lion may have neglected to check the area for several hours before the accident. In this case, however, the size of the puddle was comparably smaller than the puddle in Rodgers, and Ms. Flowers did not present any evidence regarding when the area 19was last inspected.[4]
In addition, we find that Ms. Flowers’ testimony that she did not see any water leaking from the jug or dripping from the shelf to the floor disproves her assertion that Wal-Mart had constructive notice of the allegedly dangerous condition for some period of time prior to the accident. She stated in her affidavit that because she did not observe any water on the shelf, she was “convinced that the missing two-thirds of water had leaked out some considerable time prior to my [sic] arrival on the scene such as to allow the upper shelving to dry up.” (emphasis in original). However, this is a mere allegation that is not supported by the evidence. The party opposing a summary judgment cannot rest on mere allegations or denials; she must present specific facts showing that genuine issues of material facts exist. Rodgers, supra, at 627-28. Having found that Ms. Flowers will be unable to prove the temporal element of her cause of action, we do not reach her argument of reasonableness in this case. Because a plaintiff must prove each of the enumerated elements under La. R.S. 9:2800.6(B), “the failure to prove any is fatal to the claimant’s cause of action.” White, supra, at 1086.

Discovery

Though not specifically delineated as an assignment of error, Ms. Flowers contends that the trial court erred in prematurely ruling on the motion for summary judgment before discovery was completed. We note that this litigation commenced in September of 2008 with the filing of Ms. Flowers’ petition. Wal- *702 Mart moved for summary judgment eight months later on May 18, 2011, but the motion was not heard and ruled upon until November of 2011.
| inThere is no absolute right to delay an action on a motion for summary judgment until discovery is completed. Simoneaux v. E.I. du Pont de Nemours and Co., Inc., 483 So.2d 908 (La.1986). “Under C.C.P. art. 967, a trial judge clearly has the discretion to issue a summary judgment after the filing of affidavits, or the judge may allow further affidavits or discovery to take place.” Id. at 912 (emphasis in original). In this case, Ms. Flowers had ample opportunity to complete discovery, and contrary to her assertion, there is no evidence that a motion to compel was filed prior to the hearing on the motion for summary judgment.
Decree
Based on the evidence presented, we find that Ms. Flowers has failed to make a positive showing that Wal-Mart had constructive notice of the allegedly dangerous condition prior to her fall. Her assertion that the water had to have come from the jug that was missing two-thirds its contents is merely speculative — which is insufficient to defeat a motion for summary judgment. Accordingly, the judgment appealed from is affirmed.

AFFIRMED

. "Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition. La. R.S. 9:2800.6(C).

. The store manager noted that there was only about three inches of liquid remaining in the bottle.

. Ms. Flowers briefly states in her brief that the trial court failed to make an adverse presumption of spoliation regarding the jug that was missing 2/3 of its content. We note, however, that this was not specifically assigned as an error on appeal. Therefore, the issue will not be discussed.

. We take notice of Ms. LeBlanc’s statement that the man who maintained the area should have seen all the water on the floor. We note however that Ms. LeBlanc arrived on the scene after Ms. Flowers had already fallen. Based on Ms. Flower's own testimony, the gallon jug of water that she had retrieved from the shelf burst open and added to the water that was allegedly already on the floor.