FREDERICKA HOMBERG WICKER, Judge.
^Defendants, Harmony Construction, LLC (“Harmony”) and Jason Kunstler (“Mr. Kunstler”) appeal the trial court’s grant of summary judgment against them. In their first assignment of error, defendants argue the trial court erred in failing to grant their motion to revoke Mr. Kun-stler’s admissions deemed admitted and then rendering summary judgment thereon. In their second assignment, defendants argue the trial court erred by failing to find that a genuine issue of material fact precluded summary judgment, and in rendering judgment in favor ABG Properties, LLC (“ABG”). For the following reasons, we affirm in part and reverse in part the trial court’s judgment, and remand this matter to the trial court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

On June 29, 2010, plaintiffs, Anne Gau-thier, Cherie Gauthier, and Kevin Lirette, filed suit against defendants, seeking damages.[1] Plaintiffs complained that they had contracted with defendants for work on their home at 1108 Falcon Road in Metair-ie, and that defendants had failed to properly complete that work.
IsPlaintiffs further complained they suffered damages resulting from this improper work, from the defendants’ failure to pay subcontractors, and from defendants’ misrepresentation that Harmony was a licensed residential contractor.
*316 On September 27, 2010, plaintiffs propounded to defendants interrogatories, requests for production of documents, and requests for admission. On October 12, 2010, defendants’ counsel responded to the requests for admissions on behalf of Harmony, but did not respond to the discovery requests propounded to Mr. Kunstler. More than fifteen days passed without a response from Mr. Kunstler.
Thereafter, pursuant to Rule 10.1 of the Rules for Louisiana District Courts, the parties’ attorneys scheduled a discovery conference. This Rule 10.1 conference occurred on October 20, 2010. At this conference, the parties’ attorneys agreed to a two-week extension of time within which to provide discovery. Mr. Kunstler did not respond within this extended period.
On November 9, 2010, plaintiffs filed a motion to compel discovery, seeking answers to their requests for admissions. On January 14, 2011, the trial court held a hearing on this motion, granted it, and thereafter entered the parties’ consent judgment. In that judgment, the trial court ordered defendants to respond to the outstanding discovery requests no later than January 31, 2011.”[2]
Mr. Kunstler did not respond to the requests for admissions by the trial court’s January 31, 2011 deadline.[3] On February 10, 2011, the plaintiffs filed a motion to compel, for contempt, and for sanctions against defendants. In this motion, plaintiffs moved to compel defendants to respond to their discovery | requests. Plaintiffs also sought a contempt judgment and sanctions against defendants, for their failure to abide by the trial court’s January 14, 2011 judgment. Plaintiffs prayed for the trial court to enter a default judgment against defendants and assess defendants to pay all reasonable expenses, including attorney’s fees and court costs.
On April 25, 2011, Mr. Kunstler answered plaintiffs’ requests for admissions. This answer was given seven months after these requests for admissions were served on him and four days before the hearing on the plaintiffs’ motion for sanctions.
On April 29, 2011, the trial court heard plaintiffs’ motion for sanctions and thereafter granted it. As a sanction for defendants’ failure to comply with discovery deadlines, the trial court deemed admitted the requests for admissions propounded to Mr. Kunstler. The trial court confirmed this order in a written judgment on May 18, 2011.
On June 10, 2011, plaintiffs moved for leave of court to file a second amended petition. Attached to this motion was a copy of their proposed petition. The trial court granted this motion on June 15, 2011, and the plaintiffs filed their second amended petition on June 20, 2011. This amended petition added ABG as a plaintiff.
Thereafter, Mr. Kunstler filed a motion to revoke deemed admissions, seeking to have the trial court reverse its May 13, 2011 order deeming admitted plaintiffs’ re *317 quests for admissions to Mr. Kunstler. The trial court heard this motion on August 26, 2011 and denied it. The trial court confirmed this ruling by a written judgment it issued on September 13, 2011.[4]
|fiOn January 25, 2012, plaintiffs filed a motion for summary judgment against defendants. In support of this motion, plaintiffs filed a statement of uncontested material facts and essential legal elements, a memorandum in support, and a reply memorandum in support. In those memo-randa, plaintiffs argued that Harmony was liable for breach of its obligations owed pursuant to its contracts because it failed to properly complete the renovations to the property and because plaintiffs were forced to pay unexpected amounts to subcontractors over and beyond the amount included in the contracts because Harmony failed to pay its subcontractors. Plaintiffs also argued that Mr. Kunstler misrepresented that Harmony was both a commercial and residential contractor.
On April 27, 2012, the trial court held a hearing on the motion for summary judgment and admitted evidence into the record. On June 21, 2012, the trial court issued its judgment granting plaintiffs’ motion for summary judgment. In it, the court stated that the defendants failed to set forth any evidence to contradict plaintiffs motion, but rather relied only on conclusory allegations.
Plaintiffs later filed an unopposed motion to amend the trial court’s June 21, 2012 judgment. This motion sought an amended judgment to specify the amount of plaintiffs’ damages and to exclude a party which had inadvertently been added to the judgment.[5] After a hearing on this motion on September 28, 2012, the trial court granted plaintiffs’ motion to amend the judgment. The trial court rendered its amended judgment on October 29, 2012. From this judgment, defendants now appeal.

\ «DISCUSSION

In this appeal, defendants assign two errors. First, defendants argue the trial court erred in not granting their motion to revoke admissions deemed admitted and then rendering summary judgment thereon. Second, defendants argue that the trial court committed legal error in failing to find a genuine issue of material fact and rendering summary judgment in favor of ABG. Defendants contend that the summary judgment in favor of ABG is improper because it is not a party to the litigation.

Assignment One

With regard to defendants’ first assignment of error, we find that both the Louisiana Code of Civil Procedure and the court’s inherent authority to sanction litigants permitted the trial court to deny Mr. Kunstler’s motion to revoke his admissions deemed admitted.[6]
*318 First, the Louisiana Code of Civil Procedure allows a party to serve upon any other party a written request for the admission of the truth of any relevant matters of fact. La. C.C.P. art. 1466.
Failure of the party to whom the request is directed to answer or object to the request within fifteen days of service conclusively establishes that fact. La. C.C.P. arts. 1467 and 1468. Upon motion, the court may permit the admission to be withdrawn or amended when presentation of the merits will be subserved thereby and no prejudice will result to the party who obtained the admission. La. C.C.P. art. 1468.
State, Dep’t ofSoc. Servs. v. McCorkle, 97-13 (La.App. 5 Cir. 4/29/97), 694 So.2d 1077, 1079, writ denied, 97-1399 (La.9/5/97), 700 So.2d 517.
The language of article 1467 is clear; the matter is admitted unless a written answer or objection is served on the party making the request within the specified |7time after service of the request. Vardaman v. Baker Center, Inc., 96-2611 (La-App. 1 Cir. 3/13/98), 711 So.2d 727, 733. Generally, the courts have given full effect to articles 1467 and 1468 when there has been a total lack of response to requests for admissions. Id. at 732.
However, article 1467 is not a trap set for the litigant; it provides many options for the party on whom the request is served. For example, if the party cannot answer within the specified time, the court may allow additional time. See La. C.C.P. art. 1467; Vardaman, 711 So.2d at 733. Several Louisiana courts have allowed late-filed denials to requests for admissions to constitute requests for withdrawal of those admissions, even if the responses were provided extremely late and were not presented to the court by a motion to withdraw or amend the admissions. Id. at 732. Furthermore, this Court has found that these articles should not be applied automatically when the merits of an action would be served by allowing an untimely answer to constitute an intent to withdraw the admission. State, Dep’t of Soc. Servs., supra, (citing Hoskins v. Caplis, 431 So.2d 846 (LaApp. 2 Cir.1983)).
Here, Mr. Kunstler did not respond to the requests for admission until April 25, 2011. This response came seven months after the plaintiffs propounded the requests to Mr. Kunstler. Because this response came after the fifteen day period provided for in La. C.C.P. art. 1467, the trial court was permitted by the Code of Civil Procedure to deem these requests for admissions admitted.
Second, the trial court deemed these requests for admissions admitted as a sanction. We recognize that the trial court has much discretion in imposing sanctions for failure to comply with discovery orders, and its ruling should not be reversed absent an abuse of discretion. Bravo v. Borden, 07-380 (LaApp. 5 Cir. 12/27/07), 975 So.2d 36, 39 (citing Hutchinson v. Westport Ins. Corp., 04-1592 (La.11/8/04), 886 So.2d 438).
Here, Mr. Kunstler did not respond to the requests for admissions within the fifteen day time period as required by La. C.C.P. art. 1467; he did not respond after attempts to resolve the dispute were made by his and the plaintiffs’ attorneys pursuant to a Rule 10.1 conference; and he did not respond to these requests for admissions within the extended time period for response set by the court’s January 14, *319 2011 judgment. Mr. Kunstler only responded to plaintiffs’ requests for admissions four days before the scheduled hearing on plaintiffs’ motion to compel, for contempt, and for sanctions. Under these circumstances, we find that the trial court acted within its sound discretion in sanctioning Mr. Kunstler and then later denying his motion to revoke his admissions deemed admitted.
For these reasons, we find that the trial court did not err in its judgment deeming plaintiffs’ request for admissions to Mr. Kunstler admitted. We will address the summary judgment issue on its merits later in this opinion.

Assignment Two

In their second assignment, defendants argue that the trial court “committed legal error in failing to find a genuine issue of material fact and rendering Summary Judgment in favor of ABG [Properties], LLC, a non-party to [this] litigation.” Appellants make three arguments in support of this assignment of error.
First, defendants argue that “[s]ummary judgment in favor of ABG should be reversed and remanded” because ABG “was not a party prior to the second amending petition being filed” and “ABG is still not a party in this litigation.”
As an initial matter, after examining the record, we find no evidence that appellants raised or submitted this issue to the trial court. Under Rule 1-3 of the |9Uniform Rules of Louisiana Courts of Appeal, this Court reviews only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. While typically defendants’ failure to raise this issue at the trial court would preclude review of this issue on appeal, because this argument raises jurisdictional concerns, we address it on the merits.
The record reveals that on June 10, 2011, plaintiffs filed a motion for leave to file a second amended petition, attaching as an exhibit, their proposed second amended petition. The first paragraph of the second amended petition stated, in pertinent part, that “Made Petitioners herein are: A. Anne Gauthier ...; B. Cherie Gauthier ..:; C. Kevin Lirette ...; D. ABG Properties, L.L.C. (“ABG Properties”).” Plaintiffs claimed in that motion that defendants consented to their motion for leave.
On June 15, 2011, the trial court granted the plaintiffs’ motion for leave. Plaintiffs filed their proposed second amended petition on June 15, 2011. The second amended petition contained the above text adding ABG as a plaintiff.[7] On July 13, 2011, defendants jointly filed an answer to plaintiffs’ second amended petition. Defendants did not object in this answer to the addition of ABG as a plaintiff.
On the record before us, we find that ABG was validly added as a party to this suit by the plaintiffs’ second amended petition. Therefore, defendants’ first argument is without merit.
Next, defendants argue that the admissions relied upon by the trial court were propounded by improper parties or parties whose standing was never properly 1 mpled. Defendants contend that the plaintiffs who propounded the interrogatories were improper parties because those plaintiffs did not own the home on which *320 the work contracted for was to be performed. Defendants take the position that only the home’s owner, ABG, had a right of action. This argument is also without merit.
The record reflects that Kevin Lirette and Cherie Gauthier signed contracts with Harmony for work on the property. We also find evidence in the record, in the form of an act of sale, that this property was owned by ABG, an organization of which Anne Gauthier was a member and a manager. Appellants have entered no evidence into the record to dispute these facts.
It is well established that parties to a valid contract, have a right of action to enforce that contract. La. C.C. art. 2769 (“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.”); Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 10-2267 (La.10/25/11), 79 So.3d 246, 282, reh’g denied (Jan. 13, 2012) (A contract between a land’s lessee and an oil company for the cleaning and storage of pipes on the land, which allegedly polluted and damaged the land, created personal rights between the parties to the contract, not real rights that followed the land.); Thorn v. Caskey, 32, 310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653, 658 (Where a home builder abandons construction of the home and fails to fulfill his obligations under the contract, he may be found liable in an action for breach of contract. Further, where a building contractor, through his own negligence, is unable to complete the contract and thereupon abandons it, he is liable for the resulting loss, including the amount reasonably expended in minimizing such loss.).
lnOn the record before us, we find that the plaintiffs here each had a right of action in this matter because of the personal rights created by their contract for work on the home. Therefore, each plaintiff was permitted to propound discovery, such as the requests for admissions at issue, to Mr. Kunstler.
Furthermore, even if one of the plaintiffs propounding the discovery was an improper party, we recognize that, “[a]n admission made by a party is not limited to the party who requested the admission. Vardaman, supra at 731 (citing, Smith v. Cumis Ins. Society, Inc., 417 So.2d 1361, 1362 (La.App. 4 Cir.1982)). Accordingly, an admission that is the result of one party’s request for admissions may inure to the benefit of other parties to the same litigation.” On these bases, we find defendants’ second argument to be without merit.
Finally, defendants argue that the trial court erred in failing to find that a genuine issue of material fact is created by the plaintiffs’ second amended petition “as to which party, if any was lawfully represented by the alleged agents.” Defendants contend that the issue of agency is a genuine issue of material fact in dispute because the plaintiffs’ second amended petition alleges a different agency relationship than the plaintiffs’ previous petitions.
Under Louisiana law, the mover on a motion for summary judgment bears the burden of proof that there is no genuine issue of material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966; Wright v. SCC Serv. Solutions, Inc., 07-219 (La-App. 5 Cir. 9/25/07), 968 So.2d 759, 761. If the movant meets this initial burden, the burden then shifts to the adverse party to present factual support adequate to establish that he will be able to satisfy the *321 evidentiary burden at trial. Flowers v. WalMart Stores, Inc., 12-140 (La.App. 5 Cir. 7/31/12), 99 So.3d 696, 699. Thereafter, if the adverse party fails |12to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. Id.
We apply the de novo standard of review in reviewing a district court judgment on a motion for summary judgment. Robinson v. Jefferson Parish Sch. Bd., 08-1224 (La. App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043, writ denied, 09-1187 (La.9/18/09), 17 So.3d 975 (citation omitted). We use “the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Id.
On the issued disputed here, we recognize that:
An agency relationship is never presumed. In Louisiana an agency relationship is created by either express appointment of a mandatory under LSA-C.C. art. 2985, or by implied appointment arising from apparent authority. Therefore, an agent’s authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct.
St. Pierre v. Louisiana S.W. Transp., Inc., 08-532 (La.App. 5 Cir. 5/12/09), 14 So.3d 593, n. 5 (quoting Duplessis Cadillac, Inc. v. Creative Credit Servs., Inc., 564 So.2d 336, 338-39 (La.Ct.App.1990).)
La. C.C.P. art. 966(B)(2), in pertinent part, provides that the trial court shall grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law....” Regarding the requirements for affidavits, La. C.C.P. art. 967 provides that it is insufficient for an affiant to merely declare he has personal knowledge of a fact. The affidavit must affirmatively establish that the affiant is competent to testify to the matter stated by a factual averment showing how he came by such knowledge. La. C.C.P. art. 967(A).
When a motion for summary judgment is made and supported [by an affidavit ... ], an adverse party may not rest on the mere allegations or 11sdenials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
La. C.C.P. art. 967(B).
Here, the record reflects that Kevin Lir-ette swore an affidavit stating that he signed both contracts with Harmony as an agent on behalf of Anne Gauthier and ABG. Further, Mr. Lirette’s personal knowledge of these underlying facts is supported by the other allegations of his affidavit, by the contracts he signed with Harmony, and by his live testimony on August 26, 2011, which was entered into the record at the hearing on plaintiffs’ motion for summary judgment. In his live testimony, Kevin Lirette stated that he and his wife, Cherie Gauthier, live in the home, and that ABG owned the home. He further testified that he and his wife hired Harmony to do work on their home. In contrast, defendants submitted no evidence on the issue of whether agency was validly established.
Based on the plaintiffs’ unrefuted evidence of an agency relationship, and because variation between amended petitions and earlier petitions does not itself create *322 a genuine issue of material fact, we find this argument to be without merit.

On the Merits of Plaintiffs Motion for Partial Summary Judgment

Defendants argue the trial court erred in deeming plaintiffs’ request for admissions admitted and thereafter granting the motion for summary judgment on the merits. Our review of the record reveals that the trial court correctly granted summary judgment against defendant, Harmony. However, material issues of fact exist which preclude summary judgment against Mr. Kunstler personally.
In support of their claim against Harmony for breach of contract and damages, plaintiffs offered into the record: their contracts with Harmony; Kevin Lirette’s affidavit and the testimony describing both how Harmony’s work was 114improper and incomplete, and how he and Cherie Gauthier were forced to pay various subcontractors to complete work on the home when Harmony should have paid those subcontractors. Additionally, plaintiffs introduced into evidence multiple authenticated documents showing the cost of Harmony’s breach of contract and failure to properly complete the contracted-for work. We find that this unrefuted evidence sufficiently supports both the trial court’s grant of summary judgment against Harmony for its breach of contract and the damages resulting therefrom, and its judgment against Harmony in the amount of $157,546.30.[8]
On plaintiffs’ fraud claim however, we find that the trial court incorrectly granted summary judgment against defendants. Plaintiffs allege defendants defrauded them when they contracted with Harmony, to their detriment, after reasonably relying on defendants’ misrepresentation that Harmony was a licensed residential contractor. In opposition, defendants argue they did not misrepresent that Harmony was a licensed residential contractor. They argue Harmony did not require a residential contractor’s license because it held a general contractor’s license.
As to defendants’ argument, while the record shows that Harmony held a Louisiana license for Building Construction, there is no evidence that Harmony had a separate sub-classification license in Residential Building Construction.
11sLouisiana Revised Statutes, Title 37 “Professions and Occupations” Chapter 24 “Contractors” governs Louisiana contractors. Contractors are required by La. R.S. 37:2160 to be properly licensed in order to perform work. La. R.S. 37:2156.1 states that all persons who desire to become licensed shall apply and state the classification of work the applicant desires to perform from a list of major classifications. La. R.S. 37:2156.2 contains the major license category classifications of: (I) Building construction; (II) Highway, street and bridge construction; (III) Heavy construction; (IV) Municipal and public works construction; (V) Electrical *323 work; (VI) Mechanical work; (VII) Hazardous Materials; (VIII) Plumbing; and (IX) Specialty classifications. Within each of these classifications, La. R.S. 37:2156.2 provides subclassifications in which a specialty contractor may obtain a license. Under La. R.S. 37:2156.2, “Residential construction” is the eighteenth specialty subclassification of “Building Construction.” There is no separate “Home Improvement Contractor” specialty subclassi-fication within La. R.S. 37:2156.2. Home Improvement Contractors are governed by Chapter 24, Part II.
La. R.S. 37:2165 establishes the Residential Building Contractors Subcommittee which has the authority to issue licenses. La. R.S. 37:2167(A) states, “[n]o person shall work as a residential building contractor ... unless he holds an active license in accordance with the provisions of this Chapter.” La. R.S. 37:2150.1(11) defines “Residential Building Contractor” as an entity “who constructs a fixed building or structure for sale for use by another as a residence” or performs home improvement contracting, when the cost of the undertaking exceeds $75,000.00.[9]
| ^Revised Statute, Title 37, Chapter 24, Part II. “Home Improvement Contracting” addresses residential renovation work. La. R.S. 37:2175.2 requires the “Home Improvement Contractor” to obtain a “certificate of registration” from the Residential Contractors Subcommittee of the State Licensing Board of Contractors and to obtain a “residential contractor’s license” before bidding or entering into any contracts in excess of $75,000.00. However, La. R.S. 37:2175.5 exempts from both of these requirements “(3) Persons licensed as a contractor, subcontractor, or residential building contractor pursuant to Chapter 24 of this title.”
Harmony’s original “Remodeling Agreement” with Kevin Lirette and Cherie Gau-thier described activities in the “Scope of Work” section which are clearly within the ambit of a Home Improvement Contract as defined in La. R.S. 37:2150.1(7) and (8). The original contract price was $40,207.06, well below the $75,000.00 threshold which would require a Residential Builder license.
Furthermore, because Harmony had a building construction license, it was exempted by La. R.S. 37:2175.5 from both the registration and residential building contractor license requirements of La. R.S. 37:2175.2.
La. R.S. 37:2167 states, “[n]o person shall work as a residential building contractor, as defined in this Chapter, in this state unless he holds an active license in accordance with the provisions of this Chapter.” However, Harmony did not violate this prohibition because it did not perform new residential construction such that La. R.S. 37:2150.1(11) would define it as doing the work of a “Residential building contractor.” Rather, as defined in La. R.S. 37:2150.1(7) and (8), Harmony was working as a “Home improvement contractor.” Therefore, Harmony was properly licensed to do the work it contracted to perform under the 117law governing its li-censure requirements, Chapter 24, Part II “Home Improvement Contracting.” La. R.S. 37:2175.1 et seq.
*324 As to plaintiffs’ argument on fraud, we recognize that, “[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” La. C.C. art.1953. “Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations.” La. C.C. art.1954; See also Connell v. Davis, 06-9 (La.App. 5 Cir. 10/17/06), 940 So.2d 195, 206, writ denied, 06-2810 (La.1/26/07), 948 So.2d 175, and, 06-2839 (La.1/26/07), 948 So.2d 178.
“Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent.” La. C.C. art.1955. “Fraud committed by a third person vitiates the consent of a contracting party if the other party knew or should have known of the fraud.” La. C.C. art.1956. “Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence.” La. C.C. art.1957.
Here, in support of their fraud claim against Harmony, plaintiffs offered into evidence a newspaper advertisement in which Harmony described itself as:
Residential & Commercial
General Contractors
LA LIC # 44764.
Harmony’s newspaper advertisement also promised a “Seven Point Commitment to Excellence Agreement” of which point six was “Be fully licensed and insured.” Plaintiffs also offered into evidence the affidavit and testimony of Kevin Lirette | isclaiming that Harmony, and its employee Mr. Kunstler, had represented that Harmony held a residential contractor’s license and that he and the other plaintiffs would not have contracted with Harmony had they known that Harmony did not hold a residential contractor’s license.
In opposition, defendants introduced their response to plaintiffs’ statement of uncontested material facts. In that response, defendants denied the plaintiffs’ claims, including plaintiffs’ allegations and facts supporting them fraud claim. This response however was unsworn by either Mr. Kunstler or a representative of Harmony; therefore, it cannot serve to rebut the evidence plaintiffs submitted into the record. See Marino v. Parish of St. Charles, 09-197 (LaApp. 5 Cir. 10/27/09), 27 So.3d 926, 930 (“La. C.C.P. arts. 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, has no evidentiary value on a motion for summary judgment.”).
In support of plaintiffs’ fraud claim against Mr. Kunstler personally, in addition to the above evidence, the trial court had for its consideration the deemed admissions of Mr. Kunstler. In relevant part, these admissions stated that Mr. Kunstler was an employee of Harmony; that Mr. Kunstler “represented to Plaintiffs that [Harmony] was a licensed residential contractor during the duration of the project located at 1108 Falcon Road, Metairie, Louisiana;” that Harmony “was not a licensed residential contractor from June 2008 through the present;” that “none of the correspondence provided to Plaintiffs by [Mr. Kunstler] indicated that [Harmony] was not a licensed residential contractor;” and that at the time Mr. Kun-stler “communicated with Plaintiffs regarding retention of [Harmony] for *325 | mhome improvement work, [Mr. Kunstler was] aware that [Harmony] was not a licensed residential contractor.”
Considering all of the evidence on the record, we agree that plaintiffs showed that defendants misrepresented that Harmony held a residential contractor’s license, when Harmony did not.[10] We also find that the unrefuted evidence shows that plaintiffs relied on this misrepresentation when choosing to contract with Harmony for work on the home.
These findings alone however, are insufficient to support the trial court’s grant of summary judgment against defendants on plaintiffs’ fraud claim. As stated above, “[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill....” La. C.C. art.1954. Harmony had the state licensing appropriate to its home improvement work on the Falcon Lane residence. While its license was for building construction without the separate residential contractor sub-designation, this was not separately required for the work proposed. Furthermore, a trier of fact could find that the advertisement, wherein Harmony stated both that it uses “Residential and Commercial Contractor” license number 44764 and that it was “fully licensed and insured,” was not in and of itself misleading.
Had plaintiffs desired more information, plaintiffs could have easily ascertained more information regarding what licenses Harmony maintained. Harmony indeed was properly licensed and had, in the advertisement, provided its license number. Therefore, material issues of fact exist which prevent summary judgment as to the plaintiffs’ fraud claims against the defendants.

J^CONCLUSION

For the foregoing reasons, we find that Harmony breached its contracts with plaintiffs and caused them damages. We therefore affirm the trial court’s judgment against Harmony in the amount of $157,546.30. However, we reverse the trial court’s judgment to the extent that it granted summary judgment on plaintiffs’ fraud claims against defendants. Because plaintiffs’ fraud claim was the only basis for holding Mr. Kunstler liable in solido with Harmony for $157,546.30, we reverse the trial court’s granting of summary judgment to the extent that it deems Mr. Kun-stler personally liable. We remand this matter for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED

. Within this opinion, we have omitted discussion of Gemini Insurance's involvement in this litigation as they have been dismissed from this litigation with prejudice.

. Also on January 14, 2011, the trial court heard Mr. Kunstler’s previously filed exceptions of improper joinder and no cause of action. The trial court granted these exceptions and gave plaintiffs leave to amend their petition. On January 28, 2011, plaintiffs filed their first amended petition. This petition alleged, inter alia, ''[p]ursuant to LA. R.S. § 12:1320(D), Kunstler is personally liable for his misrepresentations that Harmony Construction was a licensed residential contractor. Such misrepresentations constitute fraud under Louisiana law.”

. On this date, January 31, 2011, Harmony Construction filed a motion to set aside the consent judgment, alleging that new discovery deadlines should be set given the new allegations in plaintiffs' first amended petition. This motion was not filed on behalf of Mr. Kunstler.

.Mr. Kunstler moved to take a supervisory writ on this judgment on September 30, 2011. The trial court however denied this motion as untimely on October 11, 2011. The trial court reasoned that more than thirty days had passed since it rendered an oral judgment denying the motion to revoke admissions deemed admitted at the August 26, 2011 hearing. Mr. Kunstler sought appellate review of this decision through a supervisory writ application to this Court bearing docket number 1 l-C-997. This court denied that writ, however, because Mr. Kunstler had failed to attach a copy of the trial court's order of which he complained.

. The trial court apparently inadvertently rendered its grant of summary judgment against Gemini Insurance. The plaintiffs had not moved for summary judgment against Gemini Insurance.

. At the outset, we recognize that the trial court only deemed admitted the request for admissions to Mr. Kunstler, not the request for admissions to Harmony. We further rec *318 ognize that in rendering its judgment, the trial court did not explicitly state that it relied on Mr. Kunstler’s deemed admissions when making its determination. Nevertheless, we address the merits of this assignment of error.

. In this appeal, appellants contend the plaintiffs' second amended petition “does not make ABG a party-plaintiff [ ... but rather that i]t simply alleges incorrectly that ABG had [... ] prior pleadings[ ... ] filed on its behalf.” This assertion ignores the above quoted language and is incorrect.

. The trial court’s award of this amount is supported by the transcript from the hearing on August 26, 2011, which was introduced into evidence in support of plaintiffs' motion for summary judgment. That transcript reflects the following exchange between plaintiffs' counsel and Kevin Lirette:
Q ... Exhibit 5 What is that?
A This is a comprehensive spreadsheet that shows all payments that had been made to Harmony Construction.
Q Does it also show the amounts you paid to additional contractors to fix the work?
A Yes.
Q Okay. And was there additional work that has not been done that you — for which you paid Harmony?
A Yes. There is.
Q And how much is that damage?
A It's about $9,000.

. La. R.S. 37:2150.1(7) defines "Home improvement contracting" as “the reconstruction, alteration, renovation, repair, modernization, conversion, improvement, removal, or demolition, or the construction of an addition to any pre-existing owner occupied building which building is used or designed to be used as a residence or dwelling unit, or to structures which are adjacent to such residence or building. ‘Home improvement contracting’ shall not include services rendered gratuitously-”

. As to Mr. Kunstler's admissions, he represented that Harmony was a licensed residential contractor.