FREDERICKA HOMBERG WICKER, Judge.
[2In this slip and fall suit, plaintiff appeals the trial court’s granting of summary judgment in favor of defendant-merchant. For the following reasons, we find the trial court properly determined that plaintiff has failed to meet her burden to prove actual or constructive notice of the alleged unreasonably dangerous condition as required under La. R.S. 9:2800.6 and, thus, summary judgment was appropriate under the facts of this case. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

On August 15, 2013, plaintiff, Carol Evans, filed suit against defendant, Winn-Dixie Montgomery, LLC, for damages arising out of an October 21, 2012 slip-and-fall accident at the Marrero Winn-Dixie store. Plaintiff alleged that she sustained injuries when she slipped in a puddle of standing liquid near the meat section of the store.
Following preliminary discovery, Winn-Dixie filed a motion for summary judgment, asserting that plaintiff could not satisfy her burden of proof under La. |sR.S. 9:2800.6.[1] Specifically, Winn-Dixie argued that plaintiff could not prove that it created or had actual notice of the liquid substance that she alleges caused her to slip; further, Winn-Dixie asserted that plaintiff could not show that the liquid remained on the store aisle for a specific period of time prior to the accident, as required to prove constructive notice and to satisfy the temporal element under La. R.S. 9:2800.6.
In support of its motion for summary judgment, Winn-Dixie attached the accident report and store surveillance video as well as plaintiffs and employees’ deposition testimony. Winn-Dixie first pointed to plaintiffs deposition testimony that she had no knowledge of the length of time that the water had been on the floor prior to her fall. In her deposition, plaintiff testified that she had been shopping in the store for approximately 30 minutes to one hour before the accident and did not notice any water on the floor in the store at any time prior to her fall. She testified that, after she fell, she noticed droplets of water on the floor, but she had no knowledge as to the length of time that the water had been on the floor prior to her fall. She further stated that the liquid on the floor where she slipped appeared “very clear,” with no dirt or cart marks present.
The co-director of the store, Mr. Scion-eaux, testified in his deposition that the Marrero store has approximately 1,300 to 1,500 customers per day. He further testified that the date of the accident, October 12, 2012, was the day of a Saints game, which typically produces higher traffic in the store. Mr. Scioneaux estimated that from store opening time, at 6:00 a.m., until the time of plaintiffs accident, at 11:03 a.m., approximately 600 customers would have visited the store. He testified that *389 he received no complaints concerning water on the aisle floor prior to plaintiffs fall.
j4Mr. Scioneaux testified that, following the accident, he cleaned the area with paper towels and assisted plaintiff in completing an accident report. The accident report completed on the date of the accident states that plaintiff slipped in the meat aisle of the store and that the suspected source of the water was a leaking shopping cart. Mr. Scioneaux described the water as small droplets of water that appeared to have dripped from a leaking cart or object, spanning approximately 50 to 75 feet. He continued to clean up several small droplets of water and “walked” the store until he found a shopping cart with a leaking 24-pack of water near the front of the store.
Mr. Scioneaux stated that, upon his review of the video surveillance of the accident at issue, he was 60%-75% sure that the leaking cart that he found at the front of the store belonged to a lady in a green shirt, who can be seen in the video surveillance pushing a shopping cart near the area of the accident approximately one- and-a-half minutes prior to plaintiffs fall.
The video surveillance tape, introduced into evidence at the summary judgment hearing, recorded approximately one hour of surveillance prior to plaintiffs accident. The surveillance video shows a busy grocery store aisle with several customers walking near the area of the accident without incident. The one hour video also shows various employees at or near the area of the accident.[2] Terry Twickler, an employee in the meat department, is seen in the surveillance video approximately fifteen minutes prior to plaintiffs fall, restocking meat onto the meat shelves from a rolling rack. He leaves the area and, approximately seven minutes prior to plaintiffs fall, Mr. Twickler returns and is seen in the surveillance video carrying a single, white meat tray vertically in one hand. Mr. Twickler | r,testified that no one reported any water on the floor during the time that he was in the store aisle.
In the following five minutes — the time between Mr. Twickler leaving the area with the single meat tray and the time of plaintiffs accident — the video shows at least seventeen customers walk without incident past the meat section and near the exact area where plaintiff slipped. In fact, the video shows that plaintiff traversed the exact area where she slipped less than two minutes before the accident and noticed no water present on the floor.
Approximately one-and-a-half minutes prior to plaintiffs accident, Taylor Cassilia, a Winn-Dixie cashier, is seen in the surveillance video walking past the area of the accident.[3] As the lady with the green shirt approaches the area of the accident with her shopping cart, Ms. Cassilia walks past her. After Ms. Cassilia leaves the area, the lady in the green shirt stops her cart, approximately one minute before plaintiffs accident, to select meat out of the meat case. There are no employees seen in the area between the time that the lady in the green shirt leaves the area of the accident and the time of plaintiffs fall.
In opposition to Winn-Dixie’s motion for summary judgment, plaintiff attached the *390 affidavit and report of Mitchell Wood, an architect and engineer.[4] Mr. Wood conducted a site inspection of the Marrero store on February 5, 2014. Mr. Wood’s report states that he conducted a wet coefficient of friction test (COF) by using a spray bottle to “mist[ ]” the vinyl flooring where the accident occurred. The results of this test were “average” and Mr. Wood found that the flooring could be “slippery and hazardous when wet.” The report further states that the illumination | (¡in the meat aisle of the store is “less than standard” but also indicates that “improved lighting would not necessarily have prevented the plaintiffs accident.” Although Mr. Wood’s report states that the store floor was substandard and “hazardous when wet,” it also acknowledges that, “possibly, Store management was unaware of the hazard of water/liquid pooling on the vinyl tile which could result to a slip and fall accident.”[5]
On October 17, 2014, the trial court conducted a hearing on Winn-Dixie’s motion for summary judgement.[6] After taking the matter under advisement, the trial court granted Winn-Dixie’s motion for summary judgment, dismissing plaintiffs suit with prejudice. The trial judge issued written reasons for judgment, finding that plaintiff failed to prove actual or constructive notice as required under La. R.S. 9:2800.6. This timely appeal follows.

DISCUSSION

Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Burns v. Sedgwick Claims Mgmt. Servs., 14-421 (La.App. 5 Cir. 11/25/14), 165 So.3d 147, 152; Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248; Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 547. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions, |7together with the affidavits, if any, admitted for purposes of *391 the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Trench v. Winn-Dixie Montgomery LLC, 14-152 (La.App. 5 Cir. 9/24/14), 150 So.3d 472, 475. The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, the movant’s burden on a motion for summary judgment does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the claim. Id.; Patrick v. Iberia Bank, 05-783 (La.App. 5 Cir. 3/14/06), 926 So.2d 632, 634. Thereafter, if the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C)(2).
In a slip or fall case against a merchant, a plaintiff must prove the essential elements of a standard negligence claim in addition to the requirements under La. R.S. 9:2800.6. Sheffie v. Wal-Mart Louisiana LLC, 13-792 (LaApp. 5 Cir. 2/26/14), 134 So.3d 80, 83-84, writ denied, 14-0881 (La.6/20/14), 141 So.3d 813; Melancon v. Popeye’s Famous Fried Chicken, 10-1109 (La.App. 3 Cir. 3/16/11), 59 So.3d 513, 515.
La. R.S. 9:2800.6, in pertinent part, provides:
(B) In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the | aburden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage. Lousteau v. K-Mart Corp., 03-1182 (La.App. 5 Cir. 3/30/04), 871 So.2d 618, 623, writ denied, 04-1027 (La.6/25/04), 876 So.2d 835. Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. Trench, supra.
Under La. R.S. 9:2800.6, a plaintiff has the burden of proving that the condition presented an unreasonable risk of harm, that the risk of harm was reasonably foreseeable, and that the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. Id. *392 Because a plaintiff must prove each element under La. R.S. 9:2800.6, the failure to prove any element is fatal to the plaintiffs cause of action. Trench, supra; Flowers v. Wal-Mart Stores, Inc., 12-140 (La.App. 5 Cir. 7/31/12), 99 So.3d 696, 699.
“Constructive notice” means that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. Trench, supra. To carry her burden of proving this temporal element | grequired under La. R.S. 9:2800.6(B)(2), a plaintiff must present “positive evidence” of the existence of the condition prior to the accident. Sheffie, 134 So.3d at 84; Barrios v. Wal-Mart Stores, Inc., 00-2138 (La.App. 1 Cir. 12/28/01), 804 So.2d 905, 907, writ denied, 02-0285 (La.3/28/02), 812 So.2d 636. Though there is no bright-line time period, a plaintiff must show that “ ‘the condition existed for such a period of time’ ” and that the defendant-merchant should have noticed the defect in exercising reasonable care. Sheffie, 134 So.3d at 84, citing White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, 1084; Burns v. Sedgwick Claims Mgmt. Servs., 14-421 (La.App. 5 Cir. 11/25/14), 165 So.3d 147, 153.
As the trial judge pointed out in his written reasons for judgment, the source of the water is not discernable from the surveillance video. At the trial level, plaintiff argued that the water could have dripped from a meat tray carried by a Winn-Dixie employee, Terry Twickler, who is seen carrying a white meat tray approximately seven minutes prior to the accident. Plaintiff points out that Mr. Twickler carries the meat tray vertically and asserts that condensation or water could have dripped from that meat tray. In his deposition, Mr. Twickler testified that the meat trays are washed in the evening and are completely dry by the time he uses them the following morning to restock meat. He stated that, had any water been on the tray, he would not have carried the tray vertically. Further, he testified that, in the eight years that he has worked in the meat department, he has never had any issue with water or any liquid dripping from the meat tray onto the store floor.
Further, although Mr. Scioneaux testified that he was 60%-75% sure that the water droplets came from a leaking cart, pushed by the lady in the green shirt seen in the surveillance video, he could not be certain that the leaking cart caused the water. The surveillance video does not show any water dripping from the shopping cart pushed by the lady in the green shirt. “[M]ere speculation or | insuggestion is not enough to meet the stringent burden imposed upon a plaintiff by La. R.S. 9:2800.6.” Frank v. Boomtown L.L.C., 106 So.3d 227 (La.App. 5 Cir. 12/11/12), quoting Allen v. Wal-Mart, 37,352 (La.App. 2 Cir. 6/25/03), 850 So.2d 895, 898.
Plaintiff asserts that the presence of the multiple Winn-Dixie employees in the area where the accident occurred, in the hour leading up to plaintiffs fall, is sufficient to prove constructive notice. First, pursuant to La. R.S. 9:2800.6, “[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.” Further, in this case, there is no evidence that the alleged unreasonably dangerous condition, water, was present at the time the employees were in the area or that the employees, in the exercise of reasonable care, should have noticed the water on the floor. Moreover, had the water in fact leaked from the shopping cart pushed by the lady in the green shirt, the water would only *393 then have been on the floor for one-and-a-half minutes prior to plaintiffs fall. There is no indication that any employee passed that area after the lady in the green shirt left the accident area or that Winn-Dixie was in any way provided notice of the water as required under La. R.S. 9:2800.6.
Plaintiff relies on Blackman v. Brookshire Grocery, Inc., 07-348 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185 for the proposition that a three-minute period of time in addition to the presence of the merchant’s employees in the accident area is sufficient to constitute constructive notice. Upon review of that case, the facts presented therein are clearly distinguishable. The plaintiff in Blackman slipped and fell in a puddle of red sauce in a grocery aisle near the produce section of the store. Prior to the plaintiffs fall, another patron had reported the dangerous ^condition to store management. Therefore, the defendant-merchant in Blackman had actual notice of the red sauce spilled on the floor. Further, the facts in Blackman established that the red sauce, easily visible to the naked eye, had been on the store aisle for at least three minutes. In addition to those facts, the court found that five or six employees were at or near the area where the red sauce had spilled. Further, the court found that a three-minute period of time was sufficient to remedy the spill prior to the plaintiffs fall when the defendant-merchant had actual notice of the spill. We find the facts of the Blackman case easily distinguishable from the facts of this case. In this case, there is no proof that Winn-Dixie had actual notice of the water. Further, there is no “positive evidence” that the water had been on the floor for any specific “period of time.” Accordingly, we find the Blackman case is not controlling under the facts of this case.
Upon review of the record in this matter, we find that Winn-Dixie, in its motion for summary judgment, pointed out an absence of factual support for one element of plaintiffs claim, i.e., that Winn-Dixie either created or had actual or constructive notice of the alleged hazardous condition as required under La. R.S. 9:2800.6. Thereafter, plaintiff failed to put forth sufficient evidence to demonstrate that she would be able to satisfy her evidentiary burden at trial. Accordingly, we find the trial court was correct in granting Winn-Dixie’s motion for summary judgment.
For the reasons provided herein, the trial court judgment is affirmed.

AFFIRMED

. Plaintiff also filed a motion for partial summary judgment on the issue of liability, which was dismissed as moot following the granting of Winn-Dixie’s motion for summary judgment.

. In support of its motion for summary judgment, Winn-Dixie filed a supplemental memorandum attaching the depositions of meat department employees Malcolm Burke, Marlon Acker, and Terry Twickler. Each employee testified that no one reported any water or other liquid on the floor of the meat aisle prior to plaintiff's accident.

. Taylor Cassilia is seen twice on the surveillance video, with the second time being approximately one-and-a-half minutes prior to plaintiff’s accident.

. The record reflects that Winn-Dixie filed a Daubert motion to exclude Wood’s testimony at trial. However, the trial judge specifically asked Winn-Dixie’s counsel, at the summary judgment hearing, if he had any objection to the introduction of Mr. Woods’ report for consideration in connection with the summary judgment hearing. Mr. Wood’s report was admitted into evidence, without objection, at the summary judgment hearing.

. In opposition to plaintiff's motion for partial summary judgment on the issue of liability, Winn-Dixie attached the affidavit and expert report of Leonard Quick, a civil, structural, and forensic engineer. Mr. Quick's report states that he conducted a site inspection of the Winn-Dixie Marrero store and reviewed the video surveillance of the accident. Mr. Quick opined that the flooring in the store exceeded the minimum coefficient-of-friction requirement imposed by applicable building codes. He further found that the floor is considered slip-resistant and does not present an unreasonable risk of harm. He additionally evaluated the lighting in the store at the area of the accident and determined that the illumination levels exceed the minimum requirements of the local building code. Although Mr. Quick’s report was attached to Winn-Dixie’s opposition to plaintiff's motion for partial summary judgment, it was not attached to Winn-Dixie’s motion for summary judgment and is not considered in our analysis of whether summary judgment was properly granted. See La. C.C. art. 966(F)(2).

.The trial court also conducted a hearing on plaintiff's motion for partial summary judgment on the issue of liability, which was dismissed as moot following the trial court’s granting of Winn-Dixie’s motion for summary judgment. Additional motions set for the same date, including various discovery motions, Winn-Dixie's motion for partial summary judgment on the issue of past and future lost wages, a motion to continue trial, and motions to exclude experts, were dismissed as moot following the granting of Winn-Dixie’s motion for summary judgment.