MARC E. JOHNSON, Judge.
^Plaintiffs appeal the trial court’s granting of summary judgment in favor of defendants dismissing their case with prejudice. For the following reasons, we reverse.

FACTS & PROCEDURAL HISTORY

Plaintiffs, Bryce Manis and Madison Manis through their natural tutrix, Tonya Plaisance, filed a lawsuit asserting wrongful death and survival actions against defendants, Douglas Zemlik, Arthur Lawson in his official capacity as Chief of Police for the City of Gretna, the City of Gretna, and Travelers Insurance Company, for an incident that occurred on October 3, 2005 resulting in the death of plaintiffs’ father, Michael Manis, Jr.[1] After filing an answer, defendants filed a | smotion for summary judgment claiming there were no genuine issues of material fact and they were entitled to judgment as a matter of law. Defendants argued Officer Zemlik’s actions were reasonable and justified under the circumstances and, therefore, plaintiffs could not prove the tort of excessive force. After a hearing, the trial court granted defendants’ motion for summary judgment without reasons and dismissed plaintiffs’ lawsuit with prejudice.
In support of their motion for summary judgment, defendants offered the depositions of Sergeant Scott Vinson and Officer Douglas Zemlik, the statement of eyewitness David Jenkins, the toxicology report on Manis, and the police report. In opposition to the motion for summary judgment, plaintiffs submitted the statement of eyewitness Janet Jenkins, an affidavit from Dr. Wade Schindler, two photos, and the autopsy report.
According to this evidence, at approximately 3:00 a.m. on October 3, 2005, Mr. Jenkins and his wife were driving their 18-wheeler, after having just made a delivery to a post office, when they came upon a Jeep Cherokee parked on the railroad tracks at the intersection of Belle Chasse Hwy. and Gretna Blvd. The vehicle had its brake lights on and failed to respond to a green light despite Mr. Jenkins’ honking. After the vehicle failed to respond to three light cycles, Mr. Jenkins called 911.
Sergeant Vinson and Officer Zemlik responded to the call in two separate units. Upon their arrival, they observed a white male in the driver’s seat of a Jeep that was running, in gear, and ignoring the traffic signal cycle. Sgt. Vinson reached in through the passenger’s side door and put the vehicle in park. The officers identified themselves as “Gretna Police” and tried to wake the driver, who was later identified as Michael Manis, Jr. The officers had to physically shake ]4Manis to wake him. When Manis awoke, he started cursing and flailing his arms at Sgt. Vinson. According to Sgt. Vinson, Manis made an attempt to come at him like he was angry but was restrained by his seatbelt.
The cursing and flailing lasted 30 to 40 seconds before Manis noticed Officer Zem-lik, who was standing next to the driver’s side door. Officer Zemlik told Manis to calm down and ordered him to step out of the vehicle. Manis ignored Officer Zemlik and continued to curse and began to swing his arms towards Officer Zemlik. According to Officer Zemlik, Manis repeatedly tried to come after him but was prevented *512 from doing so because he was still wearing his seatbelt. During this time, Sgt. Vinson was able to turn off the ignition through the passenger’s side door before walking around to the driver’s side to assist Officer Zemlik.
Manis then reached under the front seat of the Jeep with either one or both his hands. Officer Zemlik stepped back, pulled his weapon, and pointed it at Manis. Upon seeing Officer Zemlik draw his weapon, Sgt. Vinson likewise drew his weapon. Officer Zemlik repeatedly ordered Manis to show his hands, but Manis refused. Officer Zemlik feared Manis was retrieving a weapon. He warned Sgt. Vinson to “watch out” and told him Manis was reaching for something. Officer Zemlik stated Manis suddenly made a lunging motion like he had retrieved something and was coming up, at which time Officer Zem-lik fired his weapon.
After the incident, Mr. and Mrs. Jenkins gave statements to the police corroborating Sgt. Vinson’s and Officer Zemlik’s description of the incident. Mr. Jenkins stated that the officers woke Manis and the “guy went crazy,” reaching for and swinging his arms out of the window towards the officer on the driver’s side of the vehicle. According to Mr. Jenkins, Manis was making erratic movements. Mr. Jenkins stated the officers told Manis to exit the vehicle. Manis was trying to get | flout, but he had his seat belt on. Then, Mr. Jenkins explained one of Manis’ arms disappeared inside the vehicle and the officers screamed at him to show both his hands. Manis made a “jerk movement” like he was trying to yank something from inside the vehicle at which time one of the officers fired approximately four rounds, fatally wounding Manis.
Mrs. Jenkins likewise stated that Manis was throwing his arms around. She explained he had both arms and one leg out of the door. Then, both of Manis’ hands went down and the officers yelled for Man-is to put his hands where they could see them. Manis failed to comply. Manis made a jerking movement and shots were fired.
The autopsy showed Manis sustained five gunshot wounds: one to his left lateral neck, one to his left upper shoulder, one to his left upper arm/lower shoulder, one to the posterior aspect of his left upper arm near the junction with the trunk, and one to his posterior left shoulder. The toxicology report showed Manis tested positive for cocaine, barbiturates, THC (marijuana), and alcohol.

DISCUSSION

Plaintiffs contend genuine issues of material facts exist that preclude summary judgment.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored in the law. La. C.C.P. art. 966(A)(2); Robinson v. Jefferson Parish School Bd., 08-1224 (La.App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043, writ denied, 09-1187 (La.9/18/09), 17 So.3d 975. Even though the summary judgment procedure is favored, it is not a substitute for trial on the merits. S.J. v. Lafayette Parish School Bd., 06-2862 (La.6/29/07), 959 So.2d 884, 887 (per curiam ). “[D]espite the legislative mandate that summary judgments are favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt *513 must be resolved in the opponent’s favor.” Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049, 1050.
A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Hines v. Garrett, 04-806 (La.6/25/04), 876 So.2d 764, 765 (per curiam). A genuine issue is a “triable issue.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. If reasonable persons could disagree after considering the evidence, a genuine issue exists. However, if reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate. Id.; Alwell v. Meadowcrest Hosp., Inc., 07-376 (La.App. 5 Cir. 10/30/07), 971 So.2d 411, 414. “In determining whether an issue is ‘genuine,’ courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Smith, 639 So.2d at 751.
Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Specifically, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Matthews v. Banner, 08-339 (La.App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163. Whether a particular fact is material can be seen only in light of the | substantive law applicable to the case. Kline v. Farm Bureau Ins. Companies, 06-129 (La.App. 5 Cir. 9/26/06), 942 So.2d 1080, 1083, writ
denied, 06-2575 (La.12/15/06), 945 So.2d 697. Summary judgment “is rarely appropriate in a suit to determine whether or not a person’s behavior constituted an actionable tort under existing circumstances, since such determination almost always involves factual disputes.” Landry v. Stein, 497 So.2d 1075, 1077 (La.App. 5th Cir.1986), quoting Continental Casualty Co. v. McClure, 313 So.2d 260, 262 (La.App. 4th Cir.1975).
 Excessive force claims are analyzed under general negligence laws, which employ a duty-risk analysis. Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072, 1077. As such, plaintiffs must prove: (1) defendant owed a duty of care to plaintiffs; (2) the requisite duty was breached by defendant; (3) the conduct in question was a cause-in-fact of the resulting harm; and (4) the risk of harm was within the scope of the protection afforded by the duty breached. Id.
Whether a duty is owed is a question of law. Stroik, 699 So.2d at 1077. Police officers owe a duty of reasonableness when effecting an arrest or approaching a subject to disarm him. See La. C.Cr.P. art. 220[2]; Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Mathieu v. Imperial Toy Corp., 94-952 (La.11/30/94), 646 So.2d 318. The use of force by law enforcement officers is tested by the “reasonable force” standard established by La.C.Cr.P. art. 220. Kyle, 353 So.2d at 972. The use of excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for any injuries which result from the breach of the duty owed. Id.; Penn v. St. *514 Tammany Parish Sheriff’s Office, 02-893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, 1161.
IsWhether the force used by án officer is reasonable depends on the totality of facts and circumstances in each case. Kyle, 353 So.2d at 973. The officer’s actions must be evaluated against those of ordinary, prudent and reasonable persons placed in the same position as the officer, with the same knowledge as that possessed by the officer at the time of the incident. Id.
The following factors must be considered in determining whether the force used by an officer is reasonable under the circumstances: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense involved; (4) the chance of the arrestee’s escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (6) the exigencies of the moment. Kyle, 353 So.2d at 973. The degree of force employed is a factual question. Id.
In our de novo review of the record, we find reasonable persons could disagree on the state of evidence and, therefore, genuine issues of material fact exist that preclude summary judgment. The pivotal issue in this case is whether Deputy Zemlik’s action of firing his gun multiple times at Manis, who was restrained by a seatbelt inside his vehicle, was reasonable force in light of the circumstances.
The evidence shows Manis was flailing around upon being awakened by the police. He was restrained in his vehicle by his seatbelt. Deputy Zemlik repeatedly ordered Manis to exit the vehicle. However, Manis could not perform this simple task. Whether he willfully refused, was too inebriated, or could not because of he was restrained by his seatbelt is a fact upon which reasonable minds could differ.
While Manis was in the vehicle, Sgt. Vinson entered the vehicle on two occasions: one to put the vehicle in gear and the other to turn off the ignition. At |sno time did Sgt. Vinson indicate he saw a weapon in the vehicle. At one point, one or both of Manis’ hands vanished from the officers’ sight. Deputy Zemlik then repeatedly ordered Manis to show his hands. As Manis’ hand(s) started to come up, Deputy Zemlik fired his weapon at least four times into Manis’ shoulder and back. Whether Manis had retrieved a weapon or was simply complying with Deputy Zem-lik’s order is another fact upon which reasonable minds could differ. Additionally, whether Deputy Zemlik was reasonable in repeatedly firing his weapon under these circumstances is a fact upon which reasonable minds could differ.
As such, we find genuine issues of material fact exist that preclude summary judgment.

DECREE

For the foregoing reasons, we find the trial court erred in granting summary judgment in favor of defendants. Accordingly, we reverse the judgment and remand this case for further proceedings. All costs of this appeal are assessed to defendants, Douglas Zemlik, Arthur Lawson in his official capacity as Chief of Police for the City of Gretna, and the City of Gretna.

REVERSED AND REMANDED

. Plaintiffs first filed a § 1983 action in federal court alleging Officer Zemlik used excessive force in violation of the Fourth Amendment. On appeal from the district court’s denial of a motion for summary judgment, the United States Fifth Circuit Court of Appeals reversed and found summary judgment in favor of Officer Zemlik to be appropriate. Manis v. Lawson, 585 F.3d 839 (5th Cir.2009).

. La.C.Cr.P. art. 220 provides: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."