EDWARDS, JUDGE PRO TEMPORE, J.
Plaintiffs, Quentella Batiste and her husband, Hayward Batiste, appeal the trial court's judgment granting summary judgment *494 in favor of defendants, Veron's Supermarket, LLC, ("Veron's Supermarket") and its insurer, United Fire and Casualty Company ("United Fire")(or collectively, "Veron's Supermarket"). For the following reasons, we find the trial court properly determined that the Batistes will not be able to prove that Veron's Supermarket had constructive notice of an allegedly hazardous condition, an essential element of their cause of action pursuant to La. R.S. 9:2800.6. Accordingly, we affirm the trial court judgment.
FACTS AND PROCEDURAL HISTORY
On August 3, 2015, Quentella and Hayward Batiste filed suit against Veron's Supermarket and its insurer, United Fire, seeking to recover damages for injuries allegedly sustained as result of a November 9, 2014 slip and fall accident inside Veron's Supermarket in Lutcher, Louisiana.[1] The Batistes contend that Ms. Batiste, accompanied by her adolescent granddaughter, slipped and fell in a puddle of water while traversing the supermarket's beer and beverage aisle as she made her way to the check-out counter located at the front of the store. Ms. Batiste purportedly suffered injuries to her left shoulder necessitating surgery as a result of the fall.
Veron's Supermarket subsequently filed a motion for summary judgment on the basis that the Batistes could not meet their burden of proof under La. R.S. 9:2800.6, the Louisiana Merchant Liability Statute. Specifically, Veron's Supermarket argued the Batistes could not prove Veron's Supermarket created or had actual or constructive knowledge of the allegedly hazardous condition (i.e. , water on the floor of the aisle), an essential element of their claim under La. R.S. 9:2800.6, because the Batistes failed to demonstrate that the alleged water on the floor existed for such a period of time that it would have been discovered if Veron's Supermarket had exercised reasonable care.
In support of its motion for summary judgment, Veron's Supermarket submitted the deposition testimony of Ms. Batiste wherein she testified that she did not know where the alleged substance upon which she fell came from, what caused it, how long the substance was present on the floor prior to her fall, or whether anyone at the store had actual knowledge that the alleged substance was present on the floor before she fell. Additionally, Veron's Supermarket submitted surveillance video taken at the time of Ms. Batiste's fall, which it claimed failed to show any condition existing on the floor that could have caused Ms. Batiste to fall. Veron's Supermarket also submitted the deposition testimony of several of its employees, including Michael Fountain, George Maroudas, and Evonté Brown, each of whom testified that they did not observe or feel any substance on the floor immediately after Ms. Batiste's fall. Based on the evidence presented, Veron's Supermarket averred that Ms. Batiste could not prove that Veron's Supermarket had constructive notice of a hazardous condition that existed on the floor for some period of time prior to her fall and, thus, could not carry her burden of proof of this element at trial mandating the grant of summary judgment in its favor.
*495 The Batistes also filed a partial motion for summary judgment on the issue of spoliation of evidence, an issue raised for the first time in their motion, arguing that Veron's Supermarket intentionally destroyed portions of the surveillance videotape that captured the condition of the floor that existed for a length of time both prior and subsequent to Ms. Batiste's slip and fall, which the Batistes claim would have shown the liquid substance on the floor as well as what the store employees did to remove the spill. Because the footage preserved by Veron's Supermarket captured only fifty-five seconds, and only showed Ms. Batiste's actual slip and fall, the Batistes sought to have the lower court impose an adverse presumption against Veron's Supermarket "as to the single issue they cannot prove: that the condition of the aisle presented an unreasonable risk of harm." According to the Batistes, Veron's Supermarket selectively preserved only that portion of the videotape that was beneficial to its case and intentionally destroyed or purged the remainder of the videotape because the remainder was detrimental to Veron's Supermarket's case and favorable to the Batistes.
Additionally, the Batistes claimed that, based on the deposition testimony of Evonté Brown, wherein she conceded that the store's maintenance records did not substantiate that she had performed a floor check during the hour prior to the incident in violation of the store's clean-up policies and procedures, "constructive notice" on the part of Veron's Supermarket should have been inferred since the evidence showed that reasonable care had not been exercised. Arguing that the adverse presumption applied and that they had proven every element of their case (i.e. , that Veron's Supermarket had constructive notice that the liquid substance on the floor presented an unreasonable risk of harm and had existed on the aisle for a period of time prior to Ms. Batiste's fall, and that Veron's Supermarket had failed to exercise reasonable care to keep its aisles and floors free of hazardous conditions), the Batistes argued Veron's Supermarket was not entitled to summary judgment.
In response to the Batistes' spoliation claim, Veron's Supermarket filed a Motion to Strike objecting to "improper summary judgment evidence and argument" submitted by the Batistes in support of their claim. Specifically, Veron's Supermarket objected to the Batistes' attempt to convert their opposition to Veron's Supermarket's motion for summary judgment into an untimely filed discovery motion, and objected to various exhibits submitted by the Batistes in support of their spoliation claim.
The parties' respective motions came for hearing on April 17, 2017, at which time the trial court agreed with Veron's Supermarket that no genuine issue of material fact existed, and that the evidence presented did not establish the temporal element necessary in order for the Batistes to carry their burden of proving constructive notice.[2] Thereafter, on May 8, 2017, the *496 trial court issued a judgment that granted summary judgment in favor of Veron's Supermarket and dismissed the Batistes' suit, with prejudice.[3]
The Batistes now appeal the May 8, 2017 judgment of the trial court on the basis that they proved all elements of their claim as mandated in La. R.S. 9:2800.6, specifically the notice requirement, by offering sufficient evidence that Veron's Supermarket had constructive notice of the unsafe condition that caused their damages prior to Ms. Batiste's slip and fall. The Batistes also challenge the trial court's finding that no genuine issue of material fact existed regarding whether Veron's Supermarket intentionally, and without reasonable explanation, destroyed videotape evidence that was detrimental to their case and beneficial to the Batistes.
DISCUSSION
Standard of Review
When reviewing a district court's ruling on a motion for summary judgment, we apply the de novo standard of review. Flowers v. Wal-Mart Stores, Inc. , 12-140, p. 4 (La. App. 5 Cir. 7/31/12), 99 So.3d 696, 698. We use "the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e. , whether there is a genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." Reynolds v. Bordelon , 14-2371, p. 3 (La. 6/30/15), 172 So.3d 607, 610.
Motion for Summary Judgment
A motion for summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La C.C.P. art. (A)(2); Robinson v. Jefferson Parish School Bd. , 08-1224, p. 17 (La. App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043.
A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F). Ordinarily, the burden of proof is on the mover. See La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(D)(1) ; Temple v. Morgan , 15-1159, pp. 12-13 (La. App. 1 Cir. 6/3/16), 196 So.3d 71, 76. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a *497 material factual dispute mandates the granting of the motion. Babin v. Winn-Dixie La., Inc ., 00-0078, p. 7 (La. 6/30/00), 764 So.2d 37, 40.
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. King v. Illinois Nat. Ins. , 08-1491, p. 10 (La. 4/3/09), 9 So.3d 780, 784. A genuine issue of material fact is one as to which reasonable minds could disagree; if reasonable minds could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. ; Alwell v. Meadowcrest Hosp., Inc. , 07-376, p. 4 (La. App. 5 Cir. 10/30/07), 971 So.2d 411, 414. When examining factual issues, courts may not consider the merits of the case, make credibility determinations, evaluate testimony, or weigh evidence. Manis v. Zemlik , 11-799, p. 8 (La. App. 5 Cir. 5/8/12), 96 So.3d 509, 512-513. Therefore, "despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." Id. , 11-799, p. 7, 96 So.3d at 512-513.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Mills v. Cyntreniks Plaza, L.L.C. , 14-1115, pp. 3-4 (La App. 1 Cir. 8/19/15), 182 So.3d 80, 82. Veron's Supermarket's motion for summary judgment is governed by La. R.S. 9:2800.6, the Louisiana Merchant Liability Statute.
Louisiana Merchant Liability Statute- La. R.S. 9:2800.6
Louisiana Revised Statute 9:2800.6 governs merchant liability for slip and fall cases and places a heavy burden of proof on plaintiffs in claims against a merchant for damages arising out of a fall on the premises. Thus, in order for the Batistes to prevail in their negligence claim for the injuries Ms. Batiste purportedly suffered, they must satisfy the burden of proof as set forth in the statute, which provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of this cause of action, all of the following:
1. The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
3. The merchant failed to exercise reasonable care. In determining care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
*498 The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
Because a plaintiff must prove each of these elements, the failure to prove any one of the requirements enumerated in La. R.S. 9:2800.6 will prove fatal to the plaintiff's case. Flowers , 12-140, p. 6, 99 So.3d at 699.
In their first assignment of error, the Batistes aver the trial court erred in granting Veron's Supermarket's motion for summary judgment because they established all of the elements necessary to prove their claim pursuant to La. R.S. 9:2800.6. In particular, the Batistes contend that they proved the notice requirement by offering sufficient evidence that Veron's Supermarket and its employees had constructive notice of the liquid existing on the floor prior to Ms. Batiste's slip and fall. We disagree.
Where a plaintiff, such as Ms. Batiste, relies upon constructive notice under La. R.S. 9:2800.6(B)(2), the plaintiff must come forward with "positive evidence" showing the damage-causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence. Flowers , 12-140, pp. 6-7, 99 So.3d at 699. This element is referred to as the "temporal" element. White v. Wal-Mart Stores, Inc. , 97-0393, p. 9 (La. 9/9/97), 699 So.2d 1081. Absent some showing of the temporal element, there can be no inference of constructive notice. Id. The plaintiff must make a positive showing of the existence of the condition prior to the fall; mere speculation that the condition may have existed for some period of time is insufficient. Babin , 00-0078, p. 7, 764 So.2d at 40. To the contrary, a defendant merchant is not required to make a positive showing of the absence of the existence of the condition prior to the fall. White, 97-0393, p. 9, 699 So.2d at 1084. Notwithstanding that such would require the defendant to prove a negative, La. R.S. 9:2800.6 simply does not provide a shifting of the burden. Id. , 97-0393, pp. 9-10, 699 So.2d at 1084.
While there is no bright-line time period, the plaintiff must show that the condition existed for "such a period of time ..." Id. , 97-0393, p. 10, 699 So.2d at 1084. Whether the period of time is of sufficient length such that a merchant should have discovered the condition is necessarily a fact question; however, as a prerequisite, the plaintiff must first show "some time period." Id. A plaintiff who merely shows that the condition existed, without an additional showing that the condition existed for some time prior to the fall, has failed to carry the burden of proving constructive notice as mandated by the statute. Id. Though the time period need not be specific in minutes or hours, constructive notice requires that the plaintiff prove the condition existed for some time period before the fall. Flowers , 12-140, p. 7, 99 So.3d at 700.
*499 In her deposition, Ms. Batiste testified that on the morning of the incident, she was coming from church, dressed in high-heeled shoes, when she stopped at Veron's Supermarket with her granddaughter to pick up items needed to make gumbo. She stated that when she entered Veron's Supermarket, she went to the produce aisle to pick up some garlic. From there, she proceeded to the meat counter and spoke with a woman she knew who happened to be in the supermarket. She then moved to the freezer to procure pork sausage and Andouille, and then headed up the beer and beverage aisle towards the register when she slipped and fell on a white, clear substance, which she believed to be water, existing on the floor. Ms. Batiste explained that the substance was large enough that her shoe left a footprint in it. She claimed that she was walking normally and then "just slipped, [and] lost control of [her] foot." She stated that her right foot slid forward and she fell sideways to the right, causing her to hit her left shoulder, left arm, and lower back on a nearby cooler. According to Ms. Batiste, she reported the incident to the manager on duty, Mike Fountain, and told him that she had slipped in water.
During discovery, Mr. Fountain was deposed and he testified that, following the incident, he went directly to the beer aisle and the area where Ms. Batiste indicated that she had slipped and fallen. After inspecting the floor for a foreign substance, he observed a dry floor. According to Mr. Fountain, all of the store employees constantly look for spills as they move throughout the store. He never observed anything on the floor and had no knowledge of what, if anything, caused Ms. Batiste to slip.
The deposition of another Veron's Supermarket employee, George Maroudas, who was not working but was present in the store at the time of Ms. Batiste's fall, was also taken. According to Mr. Maroudas, he overheard Ms. Batiste advising one of the cashiers that there was something on the floor and that her heel had come out from under her and she had twisted her foot; Ms. Batiste did not state that she had fallen. Mr. Maroudas stated that he then asked Ms. Batiste to take him to the exact area where she fell. When they got to the spot where Ms. Batiste claimed she had fallen, Mr. Maroudas testified that he got down on his hands and knees with paper towels and wiped up the entire area.[4] In particular, he testified:
Q. I got the paper towels. I asked [Ms. Batiste] to point out to me where exactly it was that she had slipped. She showed me. I got down on my hands and knees with paper towels and I wiped the floor, the whole floor, the whole entire area of the floor. The floor was not wet.
* * * * *
I got a roll of paper towels and I got down on my hands and knees on that floor ... and I wiped up the whole entire area.
I asked her to point it out to me. I wiped up the whole entire area in and around where she was standing around that whole aisle and the paper towels were 100 percent dry.
Q. Did you touch the paper towel?
A. I touched the paper towels.
Q. Did you touch the part that touched the floor?
A. Yes, I did.
Q. Did you at any time touch Ms. Batiste's clothing to see if she was okay?
*500 A. No. No, ma'am.
Q. How long had you been in the store prior to the fall or the alleged fall?
A. About 15 or 20 minutes.
Q. If at any-time while you were in the store, were you made aware of any spills on any floors?
A. No.
Q. Did you observe any spills on the floor?
A. No.
Q. Did anybody mention any spills on the floor?
A. No.
Evonté Brown, a cashier on duty at the supermarket at the time Ms. Batiste slipped and fell, was also deposed. Ms. Brown testified that Ms. Batiste reported to her that she had fallen. While Ms. Brown did not observe Ms. Batiste's fall, when she came upon her, Ms. Batiste was still on her knees. Ms. Brown testified that she "looked to see if anything was on the ground to cause [Ms. Batiste] to fall, and [she] didn't see anything." According to Ms. Brown, she did not proceed to secure a wet floor sign, which was the store's procedure following a spill, because she did not need one; there was no water on the floor. Ms. Brown testified that there were no leaks in any of the nearby beer (or any other) coolers. Ms. Brown further testified that, on that day, she was the employee responsible for doing the "walk arounds" in the store to make sure the aisles were free and clear of debris or spills. She did not recall if her "walk arounds" on that particular Sunday took place every hour. According to the logs she initialed, Ms. Brown confirmed that she had completed "walk arounds" at 9:00 a.m., 11:00 a.m. and 1:00 p.m. She testified that, even though she did not initial the log at 10:00 a.m., this does not mean that she, in fact, did not complete a walk around at that time. She explained that on those occasions when the store got too busy or a customer was waiting to be checked out, she would not have time to actually initial the log even though she had actually completed a scheduled walk around.
Ms. Batiste conceded in her deposition that she did not know where the water (or other substance) on the floor came from, how long it had been present on the floor prior to her having slipped and fell, or whether employees of Veron's Supermarket had actual knowledge of the substance preceding her fall. The Batistes contend, however, that constructive notice on the part of Veron's Supermarket should have been inferred since the evidence submitted established that Veron's Supermarket failed to exercise reasonable care. Specifically, the Batistes aver that Evonté Brown's testimony, admitting that she failed to initial a floor inspection sheet that would have confirmed a 10:00 a.m. floor check on the morning of the incident, proves that Ms. Brown "failed to conduct a 'walk-around' between 9:00-11:00 a.m." Ms. Batiste's slip and fall occurred at approximately 10:00 a.m. Plaintiffs argue that had Ms. Brown conducted the "walk-around" immediately prior to Ms. Batiste's fall as scheduled, Ms. Brown would have discovered the puddle of water. Thus, according to plaintiffs, Ms. Batiste's fall was a result of Ms. Brown's negligent failure to timely discover the puddle of water on the floor and to adhere to the store's maintenance policies and procedures. In short, the Batistes aver that the supermarket's failure to exercise reasonable care by failing to perform regular floor checks was sufficient proof that Veron's Supermarket had constructive notice of the hazardous condition which allegedly caused Ms. Batiste to slip and fall.
We do not find that Ms. Brown's failure to initial a floor inspection sheet *501 proves that she did not perform the scheduled "walk around" prior to Ms. Batiste's fall. Ms. Brown testified that there are times when she conducts a "walk around," but does not initial the sheet because the store gets busy and requires her attention or she gets distracted by a customer and forgets to sign the sheet. Regardless, although the time period need not be specific in minutes or hours, constructive notice to a merchant of a hazardous condition can be established only where the claimant proves that the condition existed for some period of time prior to the fall. Thus, absent a positive showing that a puddle of water (or some other substance) actually existed on the floor prior to Ms. Batiste's accident, mere speculation being insufficient, Ms. Brown's failure to initial a floor inspection sheet or to perform a "walk around" falls short of proving that Veron's Supermarket either created or had prior constructive notice of the condition of the floor that was alleged to have caused Ms. Batiste to slip and fall. See Babin , 00-0078, p. 7, 764 So.2d at 40. The statute does not allow for the inference of constructive notice absent some showing of this temporal element. See White , 97-0393, pp. 9-10, 699 So.2d at 1084. "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some period of time before the fall has not carried the burden of proving constructive notice as mandated by the statute." Id. , 97-0393, p. 10, 699 So.2d at 1084-1085.[5]
While the evidence regarding the adequacy and timing of the floor inspections may be relevant for proving a failure to exercise reasonable care to discover a hazardous condition, a delay in the performance of such procedures offers no proof of how long any such condition may have been on the floor, a separate and equally essential requirement of the Batistes' burden of proof under Section 9:2800.6. Evidence that Ms. Brown did not initial the floor inspection sheet for the time period immediately preceding Ms. Batiste's accident proves nothing more than that Ms. Brown failed to sign the inspection sheet; it does not tend to prove either the presence of a foreign substance or object on the floor, or, just as critical, when any such substance or object was placed there.
In an attempt to bolster their argument that they have established all of the elements necessary to prove their claim under La. R.S. 9:2800.6, the Batistes argue that Veron's Supermarket failed to produce any witnesses (1) who can attest to the condition of the floor immediately prior to Ms. Batiste's fall, (2) who actually saw Ms. Batiste fall, or (3) who observed Ms. Batiste's clothing immediately after the fall for any evidence of a liquid stain. The burden, however, was not on Veron's Supermarket to make a positive showing of the absence of the existence of the condition prior to Ms. Batiste's fall. White , 97-0393, p. 10, 699 So.2d at 1084-1085. Nonetheless, our de novo review of the record evidence revealed that Veron's Supermarket did present the deposition testimony of several of its employees who testified that, as a part of their daily work responsibilities, they constantly walked around and visually observed the four aisles of the supermarket and were mindful of making sure that the floors were free of hazardous *502 conditions. Additionally, these employees testified that following Ms. Batiste's accident, they looked and did not observe any water or other substance on the floor in the area of the incident that would have caused Ms. Batiste to slip and fall. Consequently, despite the Batistes' assertions to the contrary, based on the record before us, we do not find that the Batistes "proved all elements mandated by La. R.S. 9:2800.6, specifically the notice requirement." The Batistes' first assignment of error is without merit.
Generally, a finding by this Court that the plaintiff failed to carry her burden of establishing that she will be able to prove all necessary elements of her claim under La. R.S. 9:2800.6 at trial would end our inquiry into whether the lower court erred in its grant of summary judgment. However, in the instant case, the Batistes also aver that Veron's Supermarket had within its possession the "best evidence to substantiate [their] contentions in this case," and that a genuine issue of material fact exists as to whether Veron's Supermarket intentionally, and without reasonable explanation, destroyed videotape evidence that was detrimental to its case and would have enabled the Batistes to prove theirs. The Batistes argue that the factfinder should be allowed to determine whether Veron's Supermarket intentionally destroyed the video footage because it would have shown that the unsafe condition that caused Ms. Batiste to fall existed on the floor for such a time that, had Veron's Supermarket acted in a reasonable manner and conducted hourly inspections, it would have discovered the puddle of water prior to Ms. Batiste's accident and prevented her injuries.[6]
Specifically, Veron's Supermarket possessed video surveillance taken on the day of the accident that captured the aisle of the store where Ms. Batiste slipped and fell. The portion of the video surveillance preserved by Veron's Supermarket contained fifty-five seconds of footage that showed Ms. Batiste slipping and falling to the floor, and included only the time immediately before, during, and after her fall. According to the Batistes, pertinent portions of the surveillance video were intentionally destroyed by Veron's Supermarket prior to affording counsel for the Batistes an opportunity to review it, thereby depriving plaintiffs the ability to prove that the dangerous condition of the floor existed for some time prior to Ms. Batiste's fall. Plaintiffs argue that the destroyed film would have provided uncontroverted evidence regarding the exact length of time the hazardous condition of the aisle existed, and would have revealed what the employees of Veron's Supermarket knew or should have known about the condition of the floor prior to the incident. In short, the Batistes contend the video footage would have substantiated every element of their claim that Veron's Supermarket now contends the Batistes cannot prove.
*503 Additionally, the Batistes argue that Veron's Supermarket intentionally destroyed the video surveillance footage because it knew the film was harmful to its case and beneficial to plaintiffs. Accordingly, the Batistes aver that because Veron's Supermarket intentionally destroyed the relevant evidence, plaintiffs are entitled to an adverse presumption that, had the evidence been produced, it would have been detrimental to Veron's Supermarket and beneficial to the Batistes. Therefore, the Batistes contend they are entitled to the presumption that, as a matter of law, the condition of the aisle immediately prior to Ms. Batiste's slip and fall presented an unreasonable risk of harm. Our de novo review of the record, however, causes us to reach a different conclusion.
The record contains the deposition testimony of Greg Veron, member/manager of Veron's Supermarket, who confirmed that, at the time of the accident, Veron's Supermarket had in place a 24-hour video surveillance system that monitored the interior and exterior of the premises. According to Mr. Veron, the system in place at that time, which contained the original footage of Ms. Batiste's fall, automatically erased itself and was recorded over approximately every three months. He testified that there was a surveillance camera that focused on the beer and beverage aisle of the store, which captured Ms. Batiste's slip and fall and the area where she fell. Mr. Veron admitted to having received a letter from plaintiffs' counsel within weeks after the incident, but prior to suit having been filed, which asked Veron's Supermarket to "preserve and protect" all "relevant information" in its possession or control, including "surveillance videos," related to the incident. According to Mr. Veron, he forwarded the letter to his insurance company, United Fire, who, thereafter, sent an adjuster to the supermarket to investigate the claim. Mr. Veron testified that the adjuster reviewed the original surveillance video from the day of the incident and that he copied approximately fifty-five seconds from it, which clip captured the relevant time period immediately before, during, and after Ms. Batiste's slip and fall. After United Fire's adjuster copied and preserved the relevant portion of the surveillance video containing the incident, according to Mr. Veron, the original video was erased and recorded over by the normal operation of the video system itself in place at that time.
The fifty-five-second video clip prepared by United Fire's adjuster was subsequently produced to Ms. Batiste's counsel in response to discovery requests and was submitted by both parties as an exhibit to their respective pleadings filed in these proceedings. We note that, even though the law does not place the burden upon Veron's Supermarket to produce positive evidence establishing the absence of a hazardous condition existing on the floor prior to the fall, based upon our de novo review of the fifty-five-second surveillance video, we conclude that the video corroborates the employees' deposition testimony and provides objective evidence that the area of the floor where Ms. Batiste fell was free and clear of any foreign substance prior to and at the time of her fall. Specifically, the video shows Ms. Batiste, accompanied by her granddaughter, walking up the beverage aisle toward the check-out counter. One can see that Ms. Batiste was wearing high-heeled shoes consisting of several inches and that the base of the heel was very small in diameter. In the video, one can also see the heel of Ms. Batiste's shoe when it touched the floor, and her ankle rolling as she slipped and fell to her knees and into a nearby cooler. After getting up, one can see Ms. Batiste point to the floor, and her and her granddaughter both tapping the floor with their feet in the area *504 where Ms. Batiste fell, obviously trying to locate whatever it was that caused Ms. Batiste to slip. Notably, as Ms. Batiste and her granddaughter are both seen repeatedly tapping the floor, neither of their feet is seen slipping or sliding, and there is no visible indication of a foreign substance or hazardous condition existing on the surface of the floor where Ms. Batiste slipped.
Thus, absent application of the adverse presumption that the Batistes request the court to impose-i.e., that the condition on the aisle presented an unreasonable risk of harm because Veron's Supermarket destroyed relevant evidence-the Batistes have offered no evidence to prove that any substance was on the floor. Even if we were to consider their argument that Veron's Supermarket intentionally destroyed evidence, we find the argument is not supported by admissible evidence contained in the record. At best, Veron's Supermarket was asked to preserve "critical evidence;" there is no admissible summary judgment evidence to establish that defendants were asked to preserve surveillance video for the entire day, or a specific portion of the day, of the accident. According to Veron's Supermarket, the relevant portion of the surveillance video (i.e. , the portion that showed Ms. Batiste falling and the condition of the floor at that time), was preserved and was produced to plaintiffs. We agree.
Apparently, the trial judge determined-and we agree-that preservation of additional pre-incident or post-incident video would not have aided the Batistes in proving the necessary elements of their claim, specifically, the notice requirement. Moreover, although we find absolutely no evidence in the record to substantiate the Batistes' claim that Veron's Supermarket intentionally destroyed surveillance video, we conclude that this is not an issue that requires our review because the relevant video that was preserved, coupled with the sworn testimony of Veron's Supermarket's employees, convinces us that no genuine issue of material fact remains and that the Batistes have failed to establish that they will be able to carry their burden at trial of proving all necessary elements of their claim under La. R.S. 9:2800.6. Not only is the record bare of any facts that might establish the temporal element necessary to prove constructive notice of a hazardous condition, other than the fact that Ms. Batiste lost her footing and fell, the record is devoid of any evidence tending to show that a hazardous condition on the floor ever even existed. Given the absence of a necessary element of the plaintiffs' burden of proof, we find the trial court properly granted summary judgment in favor of Veron's Supermarket and United Fire and dismissed the Batistes' claims, with prejudice.
Decree
For the foregoing reasons, and based on the evidence presented, we find that the Batistes have failed to make a positive showing that Veron's Supermarket had constructive notice of an allegedly dangerous condition existing on the floor prior to Ms. Batiste's fall. Because the Batistes failed to demonstrate that they would be able to meet their burden at trial to show actual or constructive knowledge, we find that the trial court properly granted summary judgment in Veron's Supermarket's favor.
AFFIRMED

The Batistes also named Greg Veron as a defendant as the alleged owner of the store. Mr. Veron filed a separate motion for summary judgment on the basis that he was not store's owner, but rather, only a member-manager of Veron's Supermarket, LLC. The Batistes did not oppose Mr. Veron's motion and, ultimately, filed a partial motion to dismiss him from the suit, with prejudice. An order of dismissal was signed by the trial court on April 27, 2017.

The trial court sustained the objections of Veron's Supermarket to various exhibits submitted by the Batistes on the basis that the exhibits did not constitute "proper summary judgement [sic] evidence" and would not be considered by the court (including: Exhibit C-letter dated 12/4/14 from plaintiffs' counsel to Veron's Supermarket noting that it had "critical evidence regarding [the] incident" and asking it to "preserve and protect this information immediately," including "surveillance videos" related to the incident; Exhibit F-letter dated 7/25/16 from plaintiffs' counsel to defense counsel regarding a 1442 Notice of Deposition of United Fire; Exhibit G-letter dated 8/15/16 from defense counsel to plaintiffs' counsel regarding request for corporate deposition of United Fire; and, Exhibit H-letter dated 11/15/16 from plaintiffs' counsel to defense counsel regarding request for assistance to locate former United Fire employee). The Batistes did not appeal the trial court's ruling rejecting and refusing to consider this evidence.

The trial court also ruled that, having granted Veron's Supermarket's motion for summary judgment, the partial motion for summary judgment filed by the Batistes was moot.

Mr. Maroudas testified that, though he is legally blind, he can see clearly 40-60 feet with his glasses on.

Although the Supreme Court in White interpreted the version of La. R.S. 9:2800.6 prior to its amendment by 1996 La. Acts, 1st Ex. Sess. No. 8 § 1, eff. May 1, 1996, the requirement in the statute that the plaintiff prove that the condition existed for "such a period of time" was not changed by the 1996 amendments. Thus, the analysis in White regarding the temporal element of La. R.S. 9:2800.6 is equally applicable to the instant case. See Williams v. Shoney's, Inc. , 99-0607 (La. App. 1 Cir. 3/31/00), 764 So.2d 1021, 1024 n. 3.

Generally, when a litigant fails to produce evidence within his reach, a presumption that the evidence would have been detrimental to his case is applied, unless the failure to produce the evidence is adequately explained. See BancorpSouth Bank v. Kleinpeter Trace, LLC, 13-1396, p. 63 (La. App. 1 Cir. 10/1/14), 155 So.3d 614, 640. This evidentiary presumption is commonly called "spoliation of evidence." Id. , 13-1396, p. 61, 155 So.3d at 639. Spoliation of evidence refers to an "intentional destruction of evidence for purposes of depriving opposing parties of its use. Desselle v. Jefferson Parish Hospital District No. 2 D/B/A East Jefferson General Hospital , 04-455, p. 16 (La. App. 5 Cir. 10/12/04), 887 So.2d 524, 534. It requires a showing that the party accused "intentionally destroyed evidence." Allegations of negligent conduct are insufficient to establish a claim for spoliation of evidence. Barthel v. State, Department of Transportation and Development , 04-1619 (La. App. 1 Cir. 6/10/05), 917 So.2d 15, 20.