JOHNSON, J.
Plaintiffs, Clyde and Mary Price, appeal the trial court's granting of summary judgment in favor of Defendant, Entergy Louisiana, L.L.C. ("ELL"), finding that ELL was Mr. Price's statutory employer and dismissing Plaintiffs' tort claims against ELL on the basis that Plaintiffs' exclusive remedy against ELL is in workers' compensation. For the following reasons, we affirm.
FACTS & PROCEDURAL HISTORY
This is Plaintiffs' second appeal. The first appeal was likewise from the trial court's granting of summary judgment in favor of ELL. However, this Court reversed the ruling and remanded for further proceedings on the basis that certain exhibits were not properly admitted into evidence for purposes of summary judgment and, thus, ELL failed to prove it was entitled to summary judgment. See Price v. Chain Electric Co. , 16-597 (La. App. 5 Cir. 4/12/17), 216 So.3d 388. On remand, ELL filed a second motion for summary judgment, which was granted on October 10, 2017 after a hearing. Plaintiffs now seek review of that judgment.
The facts have not changed since the first appeal, in which we set out the facts as follows:
*1251 On June 9, 2005, Chain Electric Company ("Chain") and Entergy Services, Inc. ("ESI") entered into a written agreement, entitled "Entergy Systemwide Multipurpose Maintenance, Modification and Construction General Services Agreement" ("the Agreement"), bearing contract number 10092965. Pursuant to the Agreement, ESI and Chain agreed that any "affiliate" of ESI could issue Contract Orders to Chain requesting Chain's services. The parties further agreed that any and all Contract Orders issued by an affiliate were deemed to incorporate the provisions of the Agreement. The Agreement provides that an affiliate that issues a Contract Order to Chain is recognized as the statutory employer of Chain's employees.
On June 1, 2011, Chain and ELL entered into a Contract Order, bearing contract number 10318822 and providing that Chain would perform services for ELL, commencing on June 1, 2011 and ending on May 31, 2013. This Contract Order indicates that it was issued pursuant to the Agreement, number 10092965, between ESI and Chain.
On November 28, 2012, while working as an employee of Chain, Clyde Price was assisting with excavation and trenching work for the purpose of adding additional line capacity for ELL. Mr. Price sustained injuries when an incident or "cave-in" occurred in the trench where he was working. On December 2, 2013, Mr. Price and his wife, Mary Price, filed this lawsuit against Chain, Entergy Corporation, and/or its affiliate, alleging that defendants were negligent by failing to ensure that proper safety procedures were followed.[1] Plaintiffs subsequently amended their petition to name ELL as a defendant, in lieu of Entergy Corporation.
Price , supra at 389-90.
In its second motion for summary judgment filed on remand on July 6, 2017, ELL asserted that it was Mr. Price's statutory employer and, therefore, it was immune from tort claims because Plaintiffs' exclusive remedy was in workers' compensation. ELL argued that it was an affiliate of ESI and, therefore, the Contract Order between ELL and Chain Electric incorporated the Agreement between Chain Electric and ESI, which expressly recognized ESI and its affiliates as a statutory employer.
In support of its motion for summary judgment, ELL submitted several exhibits, including the Agreement, the Contract Order, and the affidavits of Diane Ehlers (a procurement specialist for ESI), Randy Gegenheimer (a construction supervisor with ELL), and Mark Otts (Assistant General Counsel - Corporate and Securities with ESI), all who attested that ELL was an affiliate of ESI and Entergy Corporation, Inc. ("Entergy Corporation"), the only named affiliate in the Agreement.
Plaintiffs filed an opposition arguing that ELL failed to prove it was an affiliate of ESI as defined in the Agreement. Specifically, Plaintiffs maintained that ELL failed to prove that it was owned by Entergy Corporation or that Entergy Corporation controls, directly or indirectly, more than 50% of the ownership interest or appoints ELL's directors or their functional equivalents. Additionally, Plaintiffs contended there was no valid contract between ELL and Chain Electric because the contract was signed on behalf of ELL by someone who Plaintiffs asserted did not have express authority to do so.
*1252 In support of its opposition, Plaintiffs relied on the affidavits and deposition testimonies of Ms. Ehlers, Mr. Gegenheimer, and Mr. Otts. Plaintiffs argued that Ms. Ehlers and Mr. Gegenheimer did not have the requisite knowledge to testify whether ELL was an affiliate of Entergy Corporation. Plaintiffs further maintained that Mr. Otts' testimony was inconsistent and, thus, unreliable.
At the conclusion of the hearing on the motion for summary judgment, the trial court found that "based upon the exhibits, specifically, Mr. Otts' affidavit and organizational chart," ELL was an affiliate of Entergy Corporation. As a result, the trial court granted ELL's motion for summary judgment, finding Plaintiffs' exclusive remedy was in workers' compensation.
ISSUE
On appeal, Plaintiffs challenge the granting of summary judgment in favor of ELL on the basis it was Mr. Price's statutory employer. Plaintiffs maintain that ELL failed to prove that it was entitled to judgment as a matter of law because it failed to prove that it was an affiliate of Entergy Corporation as defined in the Agreement. Plaintiffs aver that because ELL failed to prove it was an affiliate of Entergy Corporation, it could not take advantage of the Agreement, which provided for a contractual statutory employer relationship.
LAW & ANALYSIS
Appellate courts review summary judgment de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Batiste v. United Fire & Casualty Co. , 17-482 (La. App. 5 Cir. 3/14/18), 241 So.3d 491, 496. Specifically, summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Jackson v. City of New Orleans , 12-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. denied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014). A genuine issue of material fact is one as to which reasonable minds could disagree; if reasonable minds could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
Whether a particular fact in dispute is material for purposes of summary judgment can only be determined in light of the substantive law applicable to the case. Id. When examining factual issues, courts may not consider the merits of the case, make credibility determinations, evaluate testimony, or weigh evidence. Hines v. Garrett , 04-806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam ). The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1).
Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032 et seq., an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort. Louque v. Scott Equip. Co., LLC , 15-43 (La. App. 5 Cir. 4/29/15), 170 So.3d 335, 338. The Louisiana Workers' Compensation Act applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship. Id.
The statutory employer doctrine is codified in La. R.S. 23:1061. Subsection A(1) provides in pertinent part:
*1253 when any "principal" ... undertakes to execute any work, which is part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032....
Subsection A(3) further provides that, except in the two-contract situation set forth in La. R.S. 23:1061(A)(2), a statutory employer relationship "shall not exist ... unless there is a written contract between the principal and a contractor ... which recognizes the principal as the statutory employer." When there is such a written contractual recognition of a statutory employer relationship, there is a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees that may only be overcome by showing that "the work performed is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061(A)(3).
An employer seeking to avail itself of tort immunity under La. R.S. 23:1032 bears the burden of proving its entitlement to immunity. Matrana v. Argonaut Great Central Ins. Co. , 01-640 (La. App. 5 Cir. 12/12/01), 806 So.2d 732, 734, writ denied , 02-124 (La. 3/22/02), 811 So.2d 941. The ultimate determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. Louque , 170 So.3d at 337.
Here, ELL relies on the Agreement between ESI and Chain Electric as the written contract that provides for the statutory employer relationship of which it seeks to avail itself. Specifically, Section 13.1 of the Agreement provides in pertinent part:
Nothing in this Article shall be construed as precluding the User from raising the "Statutory Employer" defense, if applicable, to any suit filed against the User by an employee of the Contractor or any Subcontractor. Further, notwithstanding anything in this Subsection to the contrary, the parties mutually agree that it is their intention to recognize the User as the statutory employer of the Contractor's and Subcontractors' employees ... in accordance with Louisiana Revised Statute 23:1061....
The Agreement further provides that "[a]n Affiliate may, from time to time, issue Contract Orders to Contractor under this Agreement..." and that all Contract Orders accepted by the Contractor are "deemed to incorporate the provisions of this Agreement."
"Affiliate" is defined in Section 1.1 of the Agreement, which contains five subsections - subsection (a) specifically lists Entergy Corporation as an affiliate while subsections (b) through (e) set forth different definitions of an affiliate. The parties agree that the definition at issue in this case is subsection (b), which defines an affiliate as
any corporation, company, partnership or other entity in the United States in which Entergy Corporation now or hereafter owns or controls, directly or indirectly, more than fifty percent (50%) of the ownership interest having the right to vote or appoint its directors or their functional equivalents ("Affiliated Company").
ELL contends that it is an affiliate of ESI and as an affiliate, it entered into a Contract Order with Chain Electric. In support of its position, ELL offered the affidavit of Mark Otts, Assistant General Counsel - Corporate and Securities with ESI, who stated that he has regular access *1254 to and is personally familiar with the business records of Entergy Corporation, the only named affiliate of ESI in the Agreement. Referring to an organizational chart that was attached as an exhibit to his affidavit, Mr. Otts stated that ELL is a subsidiary and affiliate of Entergy Corporation. He explained that Entergy Corporation owns all the membership interests in ESI, as well as Entergy Louisiana Holdings, LLC, and that Entergy Louisiana Holdings, LLC owns all the membership interests in ELL. As such, Entergy Corporation owns or controls more than 50% of the ownership interests in ELL.[2]
In opposition, Plaintiffs argue that ELL has not proven that it is an affiliate of ESI under the terms of the Agreement. First, they contend ELL was not "now" owned by Entergy Corporation at the time the Agreement was signed because ELL did not exist at that time. Second, they maintain ELL was not "hereafter owned" by Entergy Corporation at any time after the Agreement was signed because Entergy Corporation never exercised direct, immediate or exclusive authority over ELL. And, third, plaintiffs assert Entergy Corporation did not directly or indirectly control more than 50% of the ownership interest of ELL at the time the Agreement was executed. We find no merit to Plaintiffs' arguments.
The clear language of the Agreement provides that an affiliate is any corporation which Entergy Corporation "now or hereafter owns or controls, directly or indirectly, more than fifty percent (50%) of the ownership interest." The mere fact ELL came into existence after the Agreement was executed is inconsequential under the plain terms of the Agreement which includes entities that Entergy Corporation "hereafter" owns or controls. Additionally, contrary to Plaintiffs' claims that there was no direct control by Entergy Corporation of ELL, the Agreement expressly provides for direct or indirect control or ownership by Entergy Corporation of the affiliate entity. Mr. Otts admitted in his deposition that Entergy Corporation did not directly control ELL; however, he explained that because of the organizational structure, Entergy Corporation exercised indirect control of ELL. Although Plaintiffs attempted to show that Entergy Corporation did not own or control ELL through various Texas Franchise Tax Public Information Reports, this evidence did not refute Mr. Otts' deposition testimony regarding the structural organization of Entergy Corporation or its ownership and control of ELL.
Plaintiffs further challenge ELL's status as an affiliate of ESI by asserting that the Contract Order was invalid - specifically, that the person who signed the Contract Order on behalf of ELL did not possess the requisite authority to execute the contract because he was neither an employee nor agent of ELL. However, Plaintiffs offer no evidence or any legal argument in support of their position. Thus, we find this challenge lacks merit.
DECREE
Based on the foregoing, we find no genuine issues of material fact exist and that ELL is an affiliate of ESI by the clear definition set forth in the Agreement. As an affiliate, ELL contracted with Chain Electric through a Contract Order. By the terms of the Agreement, the Contract Order between ELL and Chain incorporated *1255 the provisions of the Agreement, which expressly provided that ELL was the statutory employer of Chain and its employees, which included Mr. Price. Accordingly, we find ELL is entitled to judgment as a matter of law and that summary judgment was properly granted in its favor on the basis Plaintiffs' exclusive remedy is in workers' compensation. The costs of this appeal are assessed against Appellants.
AFFIRMED

Plaintiffs also alleged that Chain intentionally exposed Mr. Price to a dangerous worksite. However, Chain was dismissed from this lawsuit on an exception of no cause of action based on a finding that plaintiffs' exclusive remedy against Chain was for workers' compensation.

Mr. Otts' affidavit was executed on February 1, 2016. He explained in his subsequent deposition that there were some corporation name changes subsequent to the November 2012 accident, but that the name changes did not change the fact that Entergy Corporation owned or controlled more than 50% of the ownership interests in ELL at the time of the November 2012 accident.